# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Allison Kutz,                              Case No. 22-cv-1623 (NEB/ECW)

        Plaintiff,

v.                                                    **ORDER**

NGI Capital, Inc. *doing business as* Apex
IT and Eric Christopher Rapp,

        Defendants.

This matter is before the Court on Defendants NGI Capital, Inc. *doing business as* Apex IT and Eric Christopher Rapp's ("Defendants") Motion to Compel Discovery (Dkt. 42) ("the Motion"). Plaintiff Allison Kutz ("Plaintiff" or "Kutz") opposes the Motion. (Dkt. 50.) For the reasons stated below, the Motion is granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Background

On June 21, 2022, Plaintiff initiated this employment discrimination, retaliation, and assault case under Title VII of the Civil Rights Act, the Minnesota Human Rights Act ("MHRA"), and Minnesota and Illinois common law. (Dkt. 1.) Plaintiff alleges that she initially began working for Defendant NGI Capital, Inc. d/b/a Apex IT ("Apex") in October 2015 as a Practice Director, and that within her first year of employment, the Chief Executive Officer at Apex, Defendant Eric Christopher Rapp ("Rapp"), sexually harassed her, leading to her resignation in May 2019. (*Id.* ¶¶ 13-15, 37.) Plaintiff alleges

that upon receiving assurances from the Executive Vice President at Apex that the company was instituting changes to improve its work environment, including by hiring a human resource professional, she agreed to return to her former role at Apex in November 2019. (*Id.* ¶¶ 38-57.) Plaintiff alleges that about 6 months after she returned, Rapp again began sexually harassing her and she refused his advances, leading to her termination in September 2021. (*Id.* ¶¶ 57-58, 125-139.) Plaintiff claimed that Rapp's harassment towards her "worsened" as time progressed, as did the "impact on [her] mental health, job and professional reputation." (*Id.* ¶ 30.) Plaintiff alleges that Apex failed to confirm her employment so that she can secure new employment, causing her to fail an employment background check. (*Id.* ¶ 140.) Plaintiff's damages against Defendants include: "past and present loss of income, lost benefits, out-of-pocket damages, mental anguish, emotional distress, physical manifestations of emotional distress, humiliation, embarrassment, loss of reputation, and other pain and suffering" as well as her attorneys' fees, costs, and disbursements, treble damages, punitive damages, "fright, humiliation, disgrace, degradation," inconvenience, civil penalties, interest, and "all relief recoverable." (*Id.* ¶¶ 141-209 & Prayer for Relief at 31, ¶¶ B, C-I.)

On March 15, 2023, Defendants filed an Answer to the Complaint, asserting several affirmative defenses. (Dkt. 41 at 29-30.)

**B.    Procedural Background**

On March 15, 2023, Defendants filed the current Motion, along with a supporting memorandum and exhibits, seeking an order compelling Plaintiff to produce and amend her discovery responses. (Dkt. 42 at 1; Dkts. 43-46.) On March 22, 2023, Plaintiff filed

an opposition to the Motion.  (Dkt. 50.)  On March 29, 2023, the Court held a hearing on the Motion.  (Dkts. 54, 63.)

At the hearing, given counsel's arguments and representations, the Court ordered Plaintiff to supplement her privilege log in order to resolve some of the issues as to the challenged entries.  (Dkt. 63 at 43:3-45:15.)  Based on this and because it appeared that an additional meet-and-confer would narrow the issues, the Court permitted the parties to file supplemental briefs after conferring and directed them to identify any remaining issues in those briefs.  (*Id.* at 57:13-59:13.)  The Court took the Motion under advisement pending submission of the parties' supplemental briefs.  (*Id.* at 57:8-12; Dkt. 54.)  On May 1, 2023, Defendants filed their supplemental brief and on May 8, 2023, Plaintiff filed her supplemental brief.  (Dkts. 71, 75.)

In her supplemental brief, Plaintiff states that the parties engaged in further discussions and compromise after Defendants filed their supplemental brief and that "Plaintiff has agreed to produce the sixteen entries [which Defendants identified in their supplemental brief as the remaining issues regarding Plaintiff's privilege log], with agreed-upon limitations," meaning there "are no outstanding issues on Defendants' Motion to Compel related to Plaintiff's claims of privilege."  (Dkt. 75 at 1-2; *see also* Dkt. 72-2, Defs.' Ex. 13 at 2-5.)  As such, the Court only discusses in this Order the remaining issues identified by the parties.

## II.    LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery.  *See* Fed. R. Civ. P. 26.  Under Rule 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

While Rule 26 contemplates a liberal scope of discovery, this Court "possess[es] considerable discretion in determining the need for, and form of, discovery . . . ." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015) (citations omitted).

As stated in the Rule, information sought in discovery must be relevant. The Eight Circuit has held that the party seeking discovery has the burden of showing relevance before the requested information is produced. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Further, not only must information sought in discovery be relevant to a claim or defense, it must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In determining proportionality, courts consider numerous factors, including 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Beseke v. Equifax Info. Servs., LLC*, No. 17-cv-4971-DWF-KMM, 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018) (quoting Fed. R. Civ. P. 26(b)(1)). To this end, a court upon a motion or on its own "must" limit

discovery, when the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" or if the discovery is outside of the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Additionally, a party must provide to the other party,

[A] computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii).

Pursuant to Rule 26(e)(1),

A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A).

In accordance with Federal Rule of Civil Procedure 37, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). And "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

### III.   ANALYSIS

As stated previously, the Court only discusses the remaining issues identified by the parties in their supplemental briefs, which include Defendants' requests for: (1) a computation of each damage claimed by Plaintiff under Rule 26 and in response to Defendants' discovery requests; (2) Plaintiff's employment records from Salesforce; (3) an authorization from Plaintiff for her medical records; and (4) for Plaintiff to produce text messages, emails, and photographs bearing on her emotional state.  (Dkt. 43 at 2, 7; Dkt. 71 at 4-9).  The Court addresses each request below.

### A.   Computation of Damages

Defendants contend in their supporting memorandum to the Motion that Plaintiff failed to provide a computation of her damages in her initial disclosures as required by Rule 26 and in response to their discovery requests, including Interrogatory Nos. 6 and 7 and Request for Production No. 12.  (Dkt. 43 at 8-19.)  Defendants contend that this information "is relevant and necessary to defend against Kutz's damages claim, guides the Court's proportionality analysis, and is indispensable for settlement discussions."  (*Id.* at 8.)  Defendants ask that Plaintiff be ordered to identify the methodology underlying her damages computations and produce all documents she will use to support her claims.  (*Id.* at 8.)  In her opposition, Plaintiff asserts that she has met her discovery obligations and will continue to do so.  (Dkt. 50.)

Plaintiff's September 16, 2022 Rule 26(a) Initial Disclosures provide:

**A computation of each category of damages claimed by the disclosing party:**

In connection with her claims against Defendants, Plaintiff seeks damages in the following areas: (1) Economic Damages; (2) Emotional Distress Damages; (3) Punitive Damages, and any other damages pursuant to the relevant statute or in equity; and (4) Attorneys' Fees and Costs.

### Economic Damages

Plaintiff has suffered, and continues to suffer past, present, and future economic damages based on Defendants' actions.

At this time, without any access to Defendants' financial information, Plaintiff is unable to make a specific calculation of her economic damages. Documents and information needed to calculate Plaintiff's economic damages are to be discovered in this litigation and Plaintiff will serve Defendants with discovery requests for this information.

Discovery is continuing.

### Emotional Distress Damages

Plaintiff has suffered, and continues to suffer, from emotional distress and physical manifestations of emotional distress, as well as other pain and suffering, as a direct result of Defendants' unlawful conduct. Plaintiff's emotional distress damages will be determined by the finder of fact.

### Punitive Damages and All Other Available Relief

Plaintiff seeks punitive damages on her claims which will be determined by the finder of fact. Plaintiff seeks all other relief available at law or in equity.

### Attorneys' Fees and Costs

Plaintiff will petition for her attorneys' fees, costs, and disbursements in connection with this action. Fees and costs are accruing and are likely to exceed $500,000 through trial.

Discovery is continuing.

(Dkt. 45-1, Defs.' Ex. 1 at 5-8.)

Defendants' Interrogatory No. 7 asks Plaintiff to: "Identify all damages you will seek from Defendants, including identifying the type of damage, the amount of the damage to date, whether the damage is continuing and if so the rate at which it continues,

how you calculated the damage, and all documents relating to the damage." (Dkt. 45-2, Defs.' Ex. 2 at 20.)

Plaintiff's January 18, 2023 amended response to Interrogatory No. 7 states:

Plaintiff objects to the use of the word "all" as used in this Interrogatory as overly broad and lacking in reasonable particularity. Plaintiff objects to this Interrogatory as it requests that she form legal conclusions regarding damages that she is not qualified—or required—to make. Plaintiff objects to this Interrogatory as it seeks information protected by the attorney-client privilege and/or work product doctrine. Plaintiff objects to this Interrogatory as seeking information outside of Plaintiff's possession and/or control. Plaintiff further objects to this Interrogatory as it seeks documents in Defendants' possession and/or control that have not yet been produced by Defendants to Plaintiff. Plaintiff objects to this request as vague and ambiguous, as it is unclear what is meant by "the rate at which it continues," referring to damages. Subject to, and without waiving these objections, Plaintiff responds as follows:

In connection with her claims against Defendants, Plaintiff seeks damages in the following areas: (1) Economic Damages; (2) Emotional Distress Damages; (3) Punitive Damages, and any other damages pursuant to the relevant statute or in equity; and (4) Attorneys' Fees and Costs.

**Economic Damages**
Plaintiff has suffered, and continues to suffer past, present, and future economic damages based on Defendants' actions. At this time, without any access to Defendants' financial information as it relates to Plaintiff's compensation and damages, Plaintiff is unable to make a specific calculation of her economic damages. Documents and information needed to calculate Plaintiff's economic damages are to be discovered in this litigation. Plaintiff intends to produce an expert report containing a calculation of her economic damages which will be disclosed in accordance with the Court's Pretrial Scheduling Order and/or Federal Rules of Civil Procedure.

**Emotional Distress Damages**

Plaintiff has suffered, and continues to suffer, from emotional distress and physical manifestations of emotional distress, as well as other pain and suffering, as a direct result of Defendants' unlawful conduct. Plaintiff's emotional distress damages will be determined by the finder of fact.

**Punitive Damages and All Other Available Relief**

Plaintiff seeks punitive damages on her claims which will be determined by the finder of fact. Plaintiff seeks all other relief available at law or in equity.

**Attorneys' Fees and Costs**
Plaintiff will petition for her attorneys' fees, costs, and disbursements in connection with this action.

In addition to the foregoing, see generally, Plaintiff's Produced Documents for relevant, responsive and non-privileged documents relating to her damages that are responsive to this Interrogatory. Discovery is continuing.

(Dkt. 45-3, Defs.' Ex. 3 at 9-11.)

Defendants' Request No. 12 seeks: "All documents reflecting your claimed

damages." (Dkt. 45-5, Defs.' Ex. 5 at 9.) Plaintiff's January 13, 2023 response states:

Plaintiff objects to the use of the word "all" as used in this Request as overly broad and lacking in reasonable particularity. Plaintiff objects to the extent this Request seeks information protected by the attorney-client privilege and/or the work product doctrine, for which information will not be produced, as well as physician-patient privilege, psychotherapist-patient privilege and/or any other medical privilege. Plaintiff objects to this Request as it seeks documents in Defendants' possession and/or control. Subject to and without waiving these objections, Plaintiff responds as follows: Plaintiff will produce responsive and nonprivileged documents and ESI in her control. See Plaintiff's produced documents. Plaintiff intends to produce an expert report containing a calculation of her economic damages which will be disclosed in accordance with the Court's Pretrial Scheduling Order and Federal Rules of Civil Procedure. Discovery is continuing.

(Dkt. 45-6, Defs.' Ex. 6 at 10-11.)

The Court discusses type of damages below.

1.      **Economic Damages**

a.      **The Parties' Arguments**

Defendants contend that Plaintiff has not identified the economic damages she seeks, and instead "vaguely claims that she 'has suffered, and continues to suffer past, present, and future economic damages based on Defendants' actions,'" leaving Defendants "in the dark about the types and amounts of economic damages she is pursuing." (Dkt. 43 at 14.) By way of example, Defendants state that they are unaware of the number of years for which Plaintiff seeks future wage loss, if her earnings prior to working at Apex will inform her wage loss calculations, if she incurred interest or other penalties while unemployed, if she will claim Defendants are liable for tangential costs such as job hunting and interviewing, and if she will claim loss of fringe benefits. (*Id.* at 14 n.1.) Defendants contend that they are entitled to the basis and facts supporting Plaintiff's claimed damages and that Plaintiff must identify the specific economic damages she requests, provide the basis and calculations for those damages, and explain the methodology used in arriving at her figures. (*Id.* at 14-15.) Defendants argue that Plaintiff's claim that she is awaiting information from Defendants does not absolve her of her duty to identify her damages, nor does production of her expert report. (*Id.* at 15.)

Plaintiff responds that in her Complaint, she "specifically seeks back pay, front pay, and lost benefits, representing her economic damages." (Dkt. 50 at 10-11 (citing Dkt. 1 at Prayer for Relief at 31, ¶ B).) Plaintiff states that she produced her expert report on March 15, 2023, and that report sets forth "detailed calculations underlying [her] economic damages, including the identification of over thirty documents relied on to

support the expert's calculations." (*Id.* at 11 (citing Defs. Ex. 11).)  Plaintiff contends

that she "cannot provide a more specific calculation of damages, nor is she obligated to

do so." (*Id.*)

> **b.    Analysis**

The Court finds that Plaintiff's discovery responses and initial disclosures as they

relate to economic damages are insufficient.  First, Plaintiff does not provide any

computation for her economic damages in either her responses to Defendants' discovery

requests or her initial disclosures.  *See Henderson v. City of Woodbury*, Civ. No. 15-3332

(RHK/FLN), 2016 WL 11020056, at *5 (D. Minn. July 22, 2016) (finding plaintiff's

discovery response as to damages was insufficient in part because plaintiff "did not

provide specific computations for any category of damages") (citing Fed. R. Civ. P.

26(a)(1)(A)(iii)).

Additionally, as stated previously, Rule 26 requires Plaintiff to provide a

computation of her damages and courts in this District have held that Rule 26 entitles a

defendant to discovery of its "adversary's theory or measure of damages, its calculations

under that theory, and expert opinions on the subject of damages."  *See, e.g.*, *Marvin*

*Lumber & Cedar Co. v. Norton Co.*, 113 F.R.D. 588, 593 (D. Minn. 1986); *Henne v.*

*Great River Reg'l Libr.*, No. 19-cv-2758 (WMW/LIB), 2021 WL 6804560, at *18 (D.

Minn. Jan. 4, 2021); *Marco Techs., LLC v. Midkiff*, No. 19-cv-2323 (PJS/LIB), 2020 WL

13558312, at *12 (D. Minn. June 4, 2020); *Gacek v. Owens & Minor Distrib., Inc.*, Civ.

No. 09-3202 (PAM/LIB), 2010 WL 11534503, at *3 (D. Minn. Oct. 21, 2010).  Plainly,

Plaintiff's discovery responses and initial disclosures as to economic damages do not meet this standard.

Moreover, Plaintiff estimates that economic damages could amount to $12 million in this case. (Dkt. 63 at 36:13-14.) She cannot simply wait until she receives discovery materials from Defendants before she complies with her discovery obligations. *See Marco Techs.*, 2020 WL 13558312, at *12-13 (finding plaintiff's discovery responses as to damages was insufficient where plaintiff asserted it was awaiting discovery responses in order for it to amend its own discovery responses); *Donaldson Co., Inc. v. Fleetguard, Inc.*, Civ. No. 04-2680 (DWF/JSM), 2005 WL 8163190, at *15 (D. Minn. Aug. 19, 2005) ("While it is clear that plaintiffs in civil actions often are unable to finally calculate their damages until discovery is received from the defendant, they are under some obligation to answer such discovery requests well prior to the discovery deadline. To have it otherwise would obviously and unfairly prejudice a defendant in its trial preparation. This is especially true where the plaintiff seeks to introduce expert testimony as to the issue of damages, since a defendant is entitled to prepare contrary expert testimony within the discovery period.") (citing cases).

Plaintiff attempts to reconcile this deficiency by stating in her response to the Motion that she specifically seeks back pay, front pay, and lost benefits in her Complaint. However, this does not suffice, as again, she has failed to state the computation, basis, or methodology for those damages. *Henne*, 2021 WL 6804560 at *18 ("Defendant is entitled to discovery regarding the allegations in Plaintiff's Complaint."); *see also Sinigaglio v. Fed. Nat'l Mortg. Ass'n*, Case No. 0:17-cv-3096-SRN-KMM, 2018 WL

1806055, at *4 (D. Minn. April 17, 2018) (requiring plaintiff to supplement his interrogatory responses to reflect information that counsel shared at a hearing but that was not included in his discovery responses).

Both parties rely on *Gacek* in support of their respective positions.  As for Defendants, they argue that Plaintiff's production of an expert report does not relieve her of her duties under Rule 26 or in response to their discovery requests.  (Dkt. 43 at 15.) Plaintiff, on the other hand, contends that the plaintiff in *Gacek* provided "minimal" answers to discovery requests regarding damages whereas, here, she "has articulated her economic damages with specificity, has made clear what types of damages she seeks, and has served a detailed expert report that includes the calculations and documents on which her economic damages rely."  (Dkt. 50 at 11.)

In *Gacek*, in response to the defendants' interrogatory request regarding the plaintiff's claim for monetary damages, the plaintiff stated he would "abide by jury awards" and referred the defendants to all documents that had been produced in the case in response to defendants' request for production regarding damages.  2010 WL 11534503, at *2.  Plaintiff also stated that he would "supplement his answer to this interrogatory in plaintiff's expert's opinion within the next few weeks" and then produced his expert report which "appear[ed] to be primarily directed at calculating Plaintiff's lost wages and other related damages."  *Id.*  The defendants maintained that the plaintiff's discovery responses were insufficient.  The *Gacek* court found that while the plaintiff had "disclosed the type of damages that he claims, along with an expert report

that addresses certain elements of the claimed damages, this does not relieve him of providing a complete response to specific discovery requests." *Id.* at *3.

Although, the responses provided by Plaintiff in this case contain more detail than those provided by the *Gacek* plaintiff, the premise in *Gacek* applies here as Plaintiff "has failed to specifically identify all of the damages [she] claims, the amounts and how calculated . . ." in response to Defendants' Interrogatory No. 7.  As found by the *Gacek* court:

> Plaintiff cannot simply refer to the expert report. Rather, [s]he must provide a full and complete response outlining the damages [s]he claims— particularly where [s]he seeks recovery based on specific, identifiable facts—and in what amounts . . . To the extent that Plaintiff intends to request a specific amount of damages of the jury at trial, [s]he must make a good faith effort to quantify those damages, however imprecise those calculations may be.

*Id.*

For these reasons, the Court finds that Plaintiff's initial disclosures and responses to Defendants' Interrogatory No. 7 and Request No. 12 are deficient and orders Plaintiff to supplement her initial disclosures and discovery responses with respect to economic damages within 2 weeks from the date of the Order.  If Plaintiff intends to limit her economic damages and supporting documents to those identified in her expert report, she must state so in response to Interrogatory No. 7 and Request No. 12.  This Order does not preclude Plaintiff from seasonably supplementing her initial disclosures and discovery responses consistent with Rule 26(e).

## 2.   Emotional Distress Damages

### a.   The Parties' Arguments

Defendants contend that other factors in Plaintiff's life were responsible for her emotional distress.  (Dkt. 43 at 6 (citing Defendants' Answer ¶ 33; Privilege Log, Olawsky Ex. 7, at December 12, 2018, January 7 and 28, 2019).)  Defendants assert that information regarding Plaintiff's claimed emotional distress damages is critical to prepare for Plaintiff's Rule 35 medical examination and the Court's proportionality analysis.  (*Id.* at 16.)  Relying on *Henne*, Defendants claim that their request for Plaintiff to provide a calculation for her emotional distress damages is not premature, contend that if Plaintiff intends to suggest a specific figure or possible ranges of emotional distress damages at trial, "she must make a good faith effort to quantify them at this stage," and argue that this information informs the Court's analysis of the medical records Defendants seek. (*Id.* at 16-17.)  Defendants assert that even if Plaintiff stipulates "not to provide any suggestion of damages or ranges of damages at trial, it does not relieve her from disclosing the specific evidence she will use to support her claim."  (*Id.* at 18 (stating that if this is "Kutz's position, Defendants respectfully request a Stipulation or Order be entered confirming the same to avoid a "bait and switch" on the eve—or in the middle— of trial.").)

Plaintiff responds that Defendants' request for a computation of emotional distress damages and the methodology for it is "unpersuasive and impractical."  (Dkt. 50 at 12.) Plaintiff contends that emotional distress damages "are inherently difficult to 'quantify' and are generally considered a fact issue for the jury; they are therefore not amenable to

calculation contemplated by Rule 26." (*Id.*)  Plaintiff argues that courts in this District "have come to the pragmatic conclusion that plaintiffs are *not* required to disclose a specific calculation for emotional distress damages during discovery." (*Id.* (citing *Wesman v. United Parcel Serv., Inc.*, No. CV 08-457 (DSD/SRN), 2009 WL 10678175, at *2-3 (D. Minn. Mar. 18, 2009)).)  Plaintiff asserts that case law cited to by Defendants "is distinguishable, as each holding is premised on the assumption that the plaintiff would present a specific number for emotional distress damages at trial." (*Id.* at 13.)  Plaintiff contends that at this juncture, she is unable to reasonably know whether a specific number will be presented to the jury and "therefore cannot be compelled to disclose this information, as it does not presently exist." (*Id.*)  Plaintiff argues that Defendants' request regarding emotional distress damages does not weigh on a Rule 35 medical examination as one has not been noticed and because she, unlike the plaintiff in the case relied on by Defendants, claims more than garden variety emotional distress.  (*Id.* at 13-14.)

At the March 29, 2023 hearing, Defendants argued that they are entitled to information regarding Plaintiff's emotional distress damages if she intends to present a specific figure or range of numbers at trial.  (Dkt. 63 at 8:7-14.)  Defendants contended that Plaintiff had been terminated from Apex a year and a half ago, that discovery closes in three months, and that as such, at this point, Plaintiff should know whether she would ask for a range or specific figure at trial.  (*Id.* at 8:15-21.)  Defendants claimed that information regarding emotional distress damages would guide them in allocating depositions.  (*Id.* at 55:20-24.)

Plaintiff responded that information regarding emotional distress damages need not be provided in discovery and can be made closer to trial.  (*Id.* at 33:5-12.)  Plaintiff contended that moreover, it is difficult to disclose such information before Plaintiff's deposition has been taken and before all discovery materials are exchanged between the parties.  (*Id.* at 33:13-34:4.)  Plaintiff asserted that to the extent disclosure is necessary before the close of discovery, she can "work to get that estimation" but "would hesitate to really commit to any type of calculation or any specific algebraic understanding of what emotional distress damages may be presented as that's just not something that's calculable."  (*Id.* at 34:5-17.)  Plaintiff represented that she is not withholding any documents or information relating to damages, except the amount she is potentially seeking for emotional distress and that it is "incredibly difficult to pinpoint every single document that's at issue for the emotional distress damages."  (*Id.* at 35:2-23.)

### b.    Analysis

The Court is not persuaded that Plaintiff need only provide the calculation and basis for her emotional distress damages if she intends to provide a specific figure to the jury.  The *Lewis v. City of Burnsville* case cited to by Plaintiff and Defendants is instructive here and states:

> [I]f Plaintiff intends to ask the jury for a specific dollar amount of such damages at trial—**or to suggest any figures, or possible ranges**—Plaintiff is required to provide it to Defendants along with the basis for that figure. Plaintiff cannot "reserve" such disclosure until after fact discovery closes. Further, even if Plaintiff does not intend to ask for a specific amount (or suggest any figure or range) but intends to offer evidence supporting any non-economic award, Plaintiff must disclose responsive discovery regarding the claim. "If Plaintiff intends to suggest a specific amount to the jury for [non-economic damages], yet fails to supplement its Rule 26 disclosures to

17

provide Defendant with a computation of damages, Plaintiff may be foreclosed from suggesting that specific amount for emotional distress to the jury at trial." "While it is true that the ultimate amount of non-economic damages, if any, to be awarded Plaintiff will be determined by a jury, in this Court's view, that does not relieve the Plaintiff from disclosing any specific evidence they intend to utilize at trial in support of their request for emotional distress from disclosing any dollar range they intend to request from the jury. Otherwise, Plaintiff could surprise the defendants at trial with a specific request of $1,000,000 for claimed emotional harm that was never previously disclosed contrary to the spirit and intent of the applicable discovery Rules."

Civ. No.19-1117 (ECT/BRT), 2020 WL 3496990, at *4 (D. Minn. June 29, 2020) (emphasis added) (cleaned up).

The Court notes that the facts in *Wesman* are different from the facts of this case. In *Wesman*, the defendant sought to compel the plaintiff to respond to its interrogatory request "by stating a specific amount for his alleged emotional distress damages[.]" 2009 WL 10678175, at *1. Defendants here have not made such a request, and instead ask that Plaintiff be ordered to produce any specific figure or possible ranges she intends to ask the jury for at trial. Defendants' assertion that if Plaintiff stipulates "not to provide any suggestion of damages or ranges of damages at trial, it does not relieve her from disclosing the specific evidence she will use to support her claim" further emphasize this. (Dkt. 43 at 18.)

As such, to the extent Plaintiff intends to ask the jury for a specific figure or suggest a range or ranges for emotional distress damages at trial, she must disclose them to Defendants, along with the basis for such figure or ranges, including the methodologies used to calculate them and documents relied on. *See Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 282 (D. Minn. 2007) ("To the extent that

plaintiffs do not intend to suggest a specific amount to the jury for emotional distress damages, this Court will not require them to disclose a computation of these damages. However, if plaintiffs do intend to suggest a specific amount to the jury for emotional distress damages, plaintiffs shall be required to provide to defendants the basis for this figure.  After all, if plaintiffs present a specific amount to the jury for compensatory damages, then presumably they have a basis and a means for arriving at the amount they are seeking.  In short, in that situation, the calculation for emotional distress damages is not necessarily vague, and it would be unfair to defendants if plaintiffs could submit a specific dollar amount for damages to the jury without defendants having the opportunity to discover the basis for the claim and the opportunity before trial to rebut that basis. Further, this Court will not allow plaintiffs to wait until the eve of trial to provide defendants with this information.").  Within 2 weeks from the date of this Order, Plaintiff must supplement her initial disclosures and responses to Defendants' Interrogatory No. 7 and Request No. 12 as to her emotional distress damages to either provide the amount or ranges she intends to present to the jury, if any, and any basis for the amount or ranges. This Order does not preclude Plaintiff from seasonably supplementing her initial disclosures and discovery responses consistent with Rule 26(e).

### 3.  Punitive Damages

#### a.  The Parties' Arguments

Defendants contend that Plaintiff must state the basis for her punitive damages claim and produce all documents related to her allegations and argues that Plaintiff should be precluded from suggesting a specific amount at trial if she fails to provide

responsive information.  (Dkt. 43 at 18 (citing *Henne*, 2021 WL 6804560, at *19); *see also* Dkt. 63 at 8:22-10:15.)

Plaintiff responds in her brief that "assigning a specific number to punitive damages is impractical and unnecessary, and stating the basis for these damages is premature" as the deadline for a motion to amend for punitive damages had not yet expired and Defendants had just filed an answer to the Complaint a week before filing the Motion.  (Dkt. 50 at 14-15.)  According to Plaintiff, "punitive damages are subjective and not readily calculated."  (*Id.* at 15.)

### b.    Analysis

After the hearing on the Motion, on April 3, 2023, Plaintiff filed a motion to amend her Complaint to add punitive damages.  (*See* Dkt. 56.)  Plaintiff asserted in connection with her motion to amend that "it is unnecessary for Plaintiff to amend her complaint to seek punitive damages under the MHRA or Title VII" and "Plaintiff brings this Motion [to amend to add punitive damages] in accordance with the operative Scheduling Order and out of an abundance of caution to expressly state in her pleadings that she is seeking punitive damages for all claims."  (Dkt. 58 at 2 n.1.)  The Court held a hearing on Plaintiff's motion to amend on May 31, 2023, at which Plaintiff maintained that she need not amend her claims for punitive damages under the MHRA, Title VII, and as to her Illinois assault claim based on Defendants' argument that Ill. Rev. Stat. Ch. 110, ¶ 2-604.1 does not apply to that claim.  If Plaintiff need not amend to seek punitive damages under the MHRA, Title VII, or her Illinois assault claim, it is not premature for

Defendants to seek discovery as to the punitive damages to which she believes she is entitled to notwithstanding the fact that the motion to amend remains under advisement.

Accordingly, to the extent Plaintiff intends to present a specific figure for punitive damages to the jury, she must provide Defendants with the figure, any supporting calculation, documents relied on, and basis for the figure. *See Henne*, 2021 WL 6804560, at *19-20 (requiring plaintiff to provide information, including the basis, facts, and methodologies, regarding any specific amount of punitive damages that she intended to claim at trial where the plaintiff argued that defendants' request regarding punitive damages was premature given that her entitlement to it had not yet been established, the damages continued to accrue, and the damages depended on facts that had yet to be discovered, and stating that if plaintiff "does not provide information regarding any specific amount of punitive . . . damages that she will be claiming at trial at this juncture, then she may be precluded from requesting a specific amount at trial"); *see also Henderson*, 2016 WL 11020056, at *6 (ordering plaintiff to provide defendants with an itemized calculation of damages, including punitive damages, if she intends to present it to the jury); *Smith v. City of Chicago*, No. 14 CV 3467, 2020 WL 13599000, at *4-5 (N.D. Ill. Nov. 4, 2020) (finding in the context of non-economic damages that the plaintiffs risked being precluded from presenting a figure to the jury if they failed to disclose a figure for their non-economic to defendants); *E.E.O.C. v. Gen. Motors Corp.*, Civ. No. 3:06-cv-19-WHB-LRA, 2009 WL 910812, at *3 (S.D. Miss. April 1, 2009) (declining to bar or limit plaintiff's recovery of punitive damages but stating that plaintiff "will not be permitted to suggest to the jury the amount of . . . punitive damages that

should be awarded at trial" given plaintiff's failure to timely provide defendant with a computation of her punitive damages in discovery). This supplementation and production must occur within 2 weeks of the date of this Order. This Order does not preclude Plaintiff from seasonably supplementing her initial disclosures and discovery responses consistent with Rule 26(e).

    **4.**    **Attorneys' Fees**

        **a.**    **The Parties' Arguments**

Defendants' Interrogatory No. 6 asks Plaintiff to "[i]dentify your attorneys' fees and costs to date." (Dkt. 45-2, Defs.' Ex. 2 at 20.) In her January 2023 amended response, Plaintiff states: "Plaintiff objects to this Interrogatory as seeking information protected by the attorney-client privilege and/or work-product privilege and is otherwise premature and thereby irrelevant." (Dkt. 45-3, Defs.' Ex. 3 at 9.)

Defendants claim that the amount of "Kutz's attorneys' fees is relevant to her claim for damages, is easily calculable, and is necessary to facilitate settlement discussions." (Dkt. 43 at 13.) Defendants contend that Rule 26 specifically requires Plaintiff's early disclosure of attorneys' fees and that such a disclosure is "necessary so that Defendants can assess whether to make an offer of judgment under Rule 68 before the close of discovery." (*Id.* at 14.) Defendants assert that Plaintiff may supplement or correct her disclosure of attorney fees under Rule 26(e) to the extent such supplementation or correction is needed. (*Id.*)

Plaintiff responds that attorneys' fees are "irrelevant to discovery, remain premature, and have no bearing on the parties' ability to discuss settlement in this case or

for Defendants to bring an offer of judgment," and also contends that disclosing fees would amount to the "disclosure of privileged information," namely, Plaintiff's fee agreement with counsel.  (Dkt. 50 at 7-8, 10 (citing *Smith v. As AM., Inc.*, 829 F.3d 616, 624 (8th Cir. 2016)).)  Plaintiff contends that "[f]ees and costs could only become relevant to this action if and when Plaintiff prevails at trial, at which time the Court will assess the reasonableness of Plaintiff's fees."  (*Id.* at 8.)  Plaintiff asserts that to the extent needed, she can provide her amount of attorneys' fees for purposes of settlement, but that such a disclosure is rightly protected under Rule 408 of the Federal Rules of Evidence.  (*Id.* at 9.)  Plaintiff contends that Defendants cite no authority for the proposition that attorneys' fees and costs are necessary for purposes of a Rule 68 offer of judgment or that Rule 68 has any bearing on the scope of discovery.  (*Id.*)  Plaintiff argues that moreover, the amount of her attorneys' fees and costs is not well-suited to disclosure in discovery because it will continue to change in sum and billing rate.  (*Id.* at 10.)

At the hearing, Defendants clarified that they are not seeking Plaintiff's fee agreement with her counsel or counsel's billing records.  (Dkt. 63 at 3:14-17.)  Defendants contended that Plaintiff's attorney fees are relevant to their ability to make a Rule 68 offer and each Defendant's ability to assess settlement.  (*Id.* at 3:19-22.)  Defendants stated that there is a concurrent action pending between Apex and its insurance carrier regarding coverage for this action, making damages sought in this case relevant to the insurance action given the need to convey fees sought in this case to the insurance carrier.  (*Id.* at 3:23-4:7.)  Defendants asserted that the insurance carrier is unable to subpoena fees records from Plaintiff given Plaintiff's claim of privilege in this

case.  (*Id.* at 4:7-20.)  Defendants contended that information regarding fees and cost in this action is not however privileged as argued by Plaintiff and is relevant to claimed damages and the Court's proportionality analysis.  (*Id.* at 6:3-7:6.)

Plaintiff maintained that this information is irrelevant for purposes of discovery and is not necessary for Rule 68, and that her attorneys' fees would not be indicative of a proportionality assessment where the economic damages could amount to $12 million. (*Id.* at 35:24-37:9.)

   **b.**  **Analysis**

Based on Defendants' representations, the Court understands Defendants to only be seeking the amount of Plaintiff's attorneys' fees, not Plaintiff's fee agreement with counsel or counsel's billing records.  The "amount of attorneys' fees incurred by Plaintiff is not protected by attorney-client privilege."  *Henne*, 2021 WL 6804560, at *20 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 ("[Attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts . . .")).

Additionally, as correctly stated by Plaintiff, *Smith* does not require disclosure of attorneys' fees under Rule 26.  However, Defendants specifically request Plaintiff's attorneys' fees through their discovery requests, including Interrogatory No. 6, and as acknowledged by Plaintiff at the hearing, *Smith* did not discuss attorneys' fees as it relates to discovery requests.  *See Smith*, 829 F.3d at 624 (stating that a "computation of attorney's fees is simply not a required disclosure under Federal Rule of Civil Procedure 26(a)).

Accordingly, the "Court finds that the total amount of attorneys' fees incurred by Plaintiff is relevant to her claimed damages, hence it is discoverable." *Henne*, 2021 WL 6804560, at *2 (citing *Bores v. Domino's Pizza, LLC*, No. 05-2498 (RHK/JSM), 2007 WL 9735903, at *30 (D. Minn. Jan. 25, 2007) ("[D]iscovery of the amount of attorneys fees and costs that plaintiffs are claiming as damages . . . are reasonably calculated to lead to the discovery of admissible evidence regarding claims made in this case. Further, this information is not privileged. Therefore, plaintiffs shall provide to [the defendant] the amount of attorneys fees and costs that plaintiffs have incurred or paid to date.")); *see also Deffenbaugh v. Winco Fireworks Int'l LLC*, Case No. 06-2516-CM, 2007 WL 9723613, at *2 (D. Kan. Oct. 12, 2007) ("The court first finds that the requested attorneys' fee information, while perhaps not admissible at trial, clearly is relevant. Second, it is well-settled that a party objecting to discovery on grounds of privilege has the burden to establish the privilege. Plaintiff has failed to meet her burden of establishing that requested attorney fee information is protected as work product or privileged. Plaintiff shall supplement her damage calculation to include this information.") (footnotes omitted). As such, the Court orders Plaintiff to supplement her discovery responses to state the total amount of attorneys' fees incurred to date within 2 weeks from the date of this Order. Nothing in this Order is intended to indicate whether the amount of attorneys' fees is admissible at trial.

### 5. Other Damages

#### a. The Parties' Arguments

Defendants asserts that if "Kutz requests 'other' damages from Defendants, she must specify them so Defendants can adequately take discovery to evaluate and defend against her claims."  (Dkt. 43 at 19.)  Plaintiff responds that to the "extent discovery reveals further damages that fall outside the stated categories of damages, [she] will amend her responses."  (Dkt. 50 at 16.)

#### b. Analysis

The Court notes that at the time the current Motion was filed, discovery was set to close in three months.  (*See* Dkt. 28 at 2.)  And as previously stated, a defendant is entitled to an "adversary's theory or measure of damages [and] its calculations under that theory . . ."  *Marvin Lumber*, 113 F.R.D. at 593; *see also Henne*, 2021 WL 6804560 at *18 ("Defendant is entitled to discovery regarding the allegations in Plaintiff's Complaint.").  With the close of discovery fast approaching, it would be unfair for Plaintiff to wait until the tail end of discovery before she "amend[s] her responses" and provides responsive information as to her "other damages."  As such, to the extent Plaintiff intends to present the jury with "other damages," she must amend her discovery responses to identify such damages.  *See Henne*, 2021 WL 6804560, at *19 (noting defendant "is entitled to discovery regarding Plaintiff's allegations that she has suffered 'other serious damages[]'" and ordering plaintiff to "amend her Answer to Interrogatory No. 13 to identify the 'other serious damages' that she alleges she has suffered.").  This

Order does not preclude Plaintiff from seasonably supplementing her Rule 26(a)(1) disclosures and discovery responses consistent with Rule 26(e).

## B.   Plaintiff's Salesforce Personnel Records

The Court next addresses Defendants' request for Plaintiff's Salesforce personnel records.

### 1.   The Parties' Arguments

Defendants originally argued that Plaintiff's employment records at Salesforce are relevant to her wage loss claim and her veracity because "Defendants have reason to believe that Kutz made harassment complaint[s] at Salesforce" which may bear on her alleged emotional distress. (Dkt. 43 at 33, 35.) Defendants contended that Plaintiff's response to their Request for Production No. 26 is insufficient and that wage and employment records are highly relevant to the issue of mitigation of damages "and other types of employment information are 'reasonably calculated to lead to admissible evidence.'" (*Id.* at 33-34.) Defendants argued that until Plaintiff identifies the types of economic damages she seeks, all of her employment records are necessary to defend against her claims. (*Id.* at 33-34.) Defendants also contended that Plaintiff's Salesforce records are relevant to the following: "future losses Kutz will ostensibly claim from Defendants"; performance reviews which will speak to her career progression; future compensation; advancement opportunities; internal positions to which she applied; disciplinary records which may show her economic losses are not attributable to Defendants; and her allegation in the Complaint that Apex "failed to confirm her employment, 'causing her to fail an employment background check.'" (*Id.* at 34-35.)

Plaintiff countered that Defendants' Request No. 26 is overbroad, that she has produced mitigation-related discovery, including records relating to her compensation and efforts to obtain employment, and that the remaining information Defendants seek is not relevant and is disproportionate to the needs of the case. (Dkt. 50 at 35-37; Dkt. 63 at 45:21-46:18.) Plaintiff claimed that Defendants' request for her entire personnel file at Salesforce is unsupported and unreasonable, especially since there is no allegation of any performance issues or that Plaintiff is going to lose her current job. (Dkt. 50 at 35-36.) Plaintiff also contended that if Defendants want discovery regarding the allegation in her Complaint relating to her failed background check, such discovery must be directly requested. (*Id.* at 36.) Plaintiff asserted that Defendants can also seek more specific discovery as to the alleged harassment at Salesforce. (*Id.* at 37.)

At the hearing, Defendants clarified that they are seeking Plaintiff's Salesforce personnel file for the period she worked there in 2019 and contended that the Open Records law in Illinois, where Plaintiff lives and works, permits employees to inspect their personnel documents. (Dkt. 63 at 22:17-23:23-11.) According to Defendants, the facts of this case and the extent of damages sought justify Plaintiff's production of her employment records and that her records "relevant to economic damage, alternative theories of emotional distress, and her truthfulness." (*Id.* at 23:12-17.) Defendants contended that this information is relevant to Plaintiff's state of mind while at Salesforce given records showing she was "very unhappy at Salesforce and she felt that she wasn't making enough money" and due to records showing Plaintiff may have been harassed by a third-party representative while at Salesforce. (*Id.* at 23:18-24:22.) Defendants assert

that they offered to retrieve Plaintiff's Salesforce records but "understanding the sensitivity, typically a plaintiff likes to receive those themselves so their new employer doesn't know what's going on" and that it "is not sensible to ask about discipline she may have had at work" for the first time at her deposition. (*Id.* at 55:24-56:6.)

Plaintiff argued at the hearing that Defendants can obtain additional information regarding Plaintiff's performance and any potential sexual harassment claim at Salesforce by deposing her or through a more direct interrogatory. (*Id.* at 46:13-48:7.) Plaintiff contended that in essence, Defendants are seeking an authorization for her Salesforce records by way of their request that she seek her files under Illinois law. (*Id.* at 48:10-14.)

After the hearing on the Motion and after counsel met and conferred, Defendants asserted in their supplemental brief that Plaintiff has offered to produce information regarding "her reports of harassment at Salesforce, to the extent she is able to attain this information from her employer.'" (Dkt. 71 at 6-7.) Defendants, however, maintain that Plaintiff's personnel records at Salesforce are reasonably calculated to lead to discovery of relevant evidence regarding her damages and veracity of her claims. (*Id.* at 7.) Plaintiff responds that "Defendants have not—and cannot—articulate what other information in Plaintiff's personnel file would be relevant to this case, or why." (Dkt. 75 at 6-7.)

### 2.    Analysis

A plaintiff's post-termination wage records are relevant to her claims for damages. *See Walker v. Nw. Airlines Corp.*, No. 00-2604 MJD/JGL, 2022 WL 32539635, at *2 (D.

Minn. Oct. 28, 2022) (in employment discrimination case, finding "both past and post-termination wage and employment records are highly relevant to the issue of mitigation and to the computation of damages"). Courts "have routinely ordered the discovery of subsequent employment records insofar as they are relevant to the mitigation and computation of damages, but have limited requests seeking all subsequent employment records to the extent that such records lack relevance." *Henne*, 2021 WL 6804560, at *13 (citing cases).

Defendants' Request No. 26 seeks: "Your personnel files from all employment you have held outside of Apex since 2019." (Dkt, 45-5, Defs.' Ex. 5 at 18.) Plaintiff's November 14, 2022 response states:

> Plaintiff objects to this Request as harassing, invading Plaintiff's privacy, and as serving no legitimate purpose in this litigation. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Plaintiff objects to this Request as overly broad in subject matter in that it requests internal documents from Plaintiff's employers, which are not in Plaintiff's custody or control. Subject to, and without waiving these objections, Plaintiff responds as follows: Plaintiff will produce relevant, responsive, and non-privileged documents and ESI in her possession and/or control. *See* Plaintiff's produced documents. Discovery is continuing.

(*Id.*)

The Illinois Personnel Record Review Act provides:

> Open Records. Every employer shall, upon an employee's request which the employer may require be in writing on a form supplied by the employer, permit the employee to inspect any personnel documents which are, have been or are intended to be used in determining that employee's qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action, except as provided in Section 10. The inspection right encompasses personnel documents in the possession of a person, corporation, partnership, or other association having a contractual agreement

30

with the employer to keep or supply a personnel record. An employee may request all or any part of his or her records, except as provided in Section 10. . . . Nothing in this Act shall be construed as a requirement that an employee be permitted to remove any part of such personnel records or any part of such records from the place on the employer's premises where it is made available for inspection.

820 Ill. Comp. Stat § 40/2.  Section 3 of the Act states that "an employee may obtain a copy of the information or part of the information contained in the employee's personnel record." *Id.* § 3.

The Court understands that the only personnel records at issue here are those maintained by Salesforce from Plaintiff's time there in 2019.  To the extent Defendants seek information regarding any alleged sexual harassment at Salesforce, the request is denied as moot as Defendants state in their supplemental brief that Plaintiff has offered to produce information regarding "her reports of harassment at Salesforce, to the extent she is able to attain this information from her employer.'"  (Dkt. 71 at 6-7.)

As to Defendants' request for Plaintiff's Salesforce personnel records pertaining to her "qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action," the Court finds that Defendants have sufficiently limited their request to align with the sort of authorizations courts in this District have permitted.  For example, the court in *Holter v. Wells Fargo & Co.* permitted the following authorization:

I, the undersigned, do hereby authorize you to release the following documents and records you have regarding me to Ogletree, Deakins, Nash, Smoak & Stewart, P.C., or any representative or agent thereof.

Application for employment; offer of employment; employment agreement; documents reflecting my job performance including any achievements,

31

> commendations, attendance, and discipline; any work accommodations
> provided to me; reason(s) for my departure from employment; summary of
> wages, salary or other compensation received by me; and summary of
> benefits received by me . . .

281 F.R.D., 340, 345-46 (D. Minn. 2011); *see also Henne*, 2021 WL 6804560, at *13

(finding that the plaintiff's "job description (including duties, obligations, and dates of

employment), wage and benefits information, and if Plaintiff's subsequent employment

was terminated, the reason for that termination and related disciplinary records, if any,

are relevant and thus discovery" and noting that the "mere fact that Plaintiff has provided

Interrogatory Answers related to her damage claims, does not preclude Defendant's

discovery of relevant documents") (citing cases); *Walker*, 2002 WL 32539635, at *2

("Plaintiff cannot hide behind blanket assertions of privacy to avoid legitimate discovery

requests without showing some particular need or bad faith on the part of" the defendant

and finding "other types of employment information such as disciplinary records,

resumes, and applications may not be admissible at trial, but are reasonably calculated to

lead to admissible evidence.  For instance in order to fully assess Plaintiff's allegations,

Northwest is entitled significant latitude in which to discover whether Plaintiff has made

similar kinds of allegations against employers in the past, and whether he has been the

subject of disciplinary action for his work performance."); *Shelvy v. Wal-Mart Stores,*

*East, L.P.*, No. 11 CV 9176, 2014 WL 3882487, at *2 (N.D. Ill. Aug. 7, 2014) (finding

portions of the plaintiff's personnel files relating to the defendant's defenses and the

issues in the case relevant and discoverable).  Moreover, while Defendants can depose

Plaintiff on these topics, "any competent cross-examiner would want to see and use

relevant documents in the course of such a deposition." *Quinn v. ConAgra Foods Packaged Foods LLC*, No. 3:09-cv-214, 2010 WL 3603780, at *1 (S.D. Ohio Sept. 10, 2010).

Although Defendants have not explicitly sought an authorization from Plaintiff, their request that Plaintiff obtain her personnel record through the Illinois Open Records Act would bear the same result as when an authorization is sought. As such, Defendants' request is granted to the extent they seek information relating to Plaintiff's qualifications for employment, promotion, transfer, additional compensation, discharge, or other disciplinary action while at Salesforce to the extent Plaintiff can obtain such information by requesting her Salesforce personnel file pursuant to the Illinois Open Records Act. Plaintiff must request her personnel file under the Illinois Open Records Act within 2 weeks from the date of this Order and produce documents relating to her qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action within 30 days after she receives the file.

However, to the extent Defendants seek information about Plaintiff's allegation in the Complaint that "Apex, presumably at Rapp's insistence, has also failed to confirm her employment with Apex for purposes of Plaintiff's attempts to secure new employment, causing her to fail an employment background check" (Dkt. 1 ¶ 140), Defendants have not identified any discovery request to which this information is responsive, as the Court understands this allegation does not relate to Plaintiff's Salesforce employment. The Motion is denied insofar as Defendants ask for an order compelling production of this

information, although nothing in this Order precludes Defendants from serving discovery directed to this issue.

## C.    Plaintiff's Medical Records

Defendants identify Request No. 25 and Interrogatory No. 2 as their discovery relating to medical records.

Defendants' Request No. 25 seeks:

> All medical, psychological, and counseling records and reports in your possession or control that relate in any manner to your mental or physical condition from January 1, 2010 to present, including signed medical authorizations attached hereto as Attachment A for every doctor, psychiatrist, psychologist, social worker, counselor, or other health care provider identified in your response to Interrogatory No. 2.

(*Id.* at 36.)

Defendants' Interrogatory No. 2 asks Plaintiff to:

> Identify (by name, address and telephone) every doctor, psychiatrist, psychologist, social worker, counselor, or other health care provider by whom you have been tested, treated, examined, counseled, consulted or evaluated from January 1, 2010 to present. For each, state dates of treatment, evaluation, counseling, testing and/or examination and the purpose of the same.

(*Id.*)

### 1.    The Parties' Arguments

Defendants originally sought records from non-mental health providers from Plaintiff dating back to January 1, 2010—five years before Rapp allegedly began harassing her—stating that Plaintiff has agreed to only produce records from her mental health providers.  (Dkt. 43 at 35-42.)  Defendants requested an order requiring Plaintiff to execute the medical authorization appended to their Requests for Production and argued

34

that Plaintiff's current responses to their Request No. 25 and Interrogatory No. 2 are insufficient.  (*Id.* at 36.). Defendants claimed that because Plaintiff began seeing a mental health provider in November 2021, "the only records Kutz will produce post-date her alleged damages, and are limited to the providers she had hand-picked" and that they are entitled to see how her doctors perceived her health before she retained counsel and instituted this case.  (*Id.* at 35-36, 41-42; Dkt. 63 at 24:23-25:7.)  Defendants contended that Plaintiff placed her physical health at issue by claiming that she has suffered and continues to suffer physical manifestations of emotional distress as well as "other pain and suffering," which entitle them to Plaintiff's entire medical records so that they may properly defend against those claims and because her medical records may include information regarding her mental health.  (Dkt. 43 at 40-41 (citing a provision in the Affordable Care Act that discusses "a priority area of increasing early detection of mental health problems in primary and regular care setting, e.g., an annual gynecologic examination").)  Defendants contended that "just as any comments relating to Kutz's mental health are relevant, the absence of such comments are equally relevant and telling."  (*Id.*)  According to Defendants, Plaintiff's physical health is also related to her emotional health and relevant to assessing the veracity of her claims.  (*Id.* (contending that research sponsored by the National Institute of Mental Health and published in the Journal of the American Heart Association found a link between women who experienced workplace sexual harassment and high blood pressure).)

Plaintiff responded that she has produced relevant and discoverable medical records and that her claim for emotional distress does not entitle Defendants to all of her

medical records, "about any condition, mental or physical, without limitation, for thirteen years" as she "did not discuss her mental health or physical manifestation of mental health" with her non-mental health providers. (Dkt. 50 at 37-40.) Plaintiff argued that Defendants request is improper, irrelevant, and disproportionate given "the burden caused by this invasion of Kutz's privacy" and that Rule 34 does not entitle Defendants to this information. (*Id.* at 37-38; Dkt. 63 at 48:18-51:19.) Plaintiff contended that Defendants "grossly misrepresent" the Affordable Care Act article they cited to and that the only "'critical periods' that should be 'prioritized' for screening are 'specific *reproductive* periods of vulnerability,' like adolescence or pregnancy." (Dkt. 50 at 39.) Plaintiff asserted that Defendants are unable to articulate a good faith basis to discovery of all her medical records over the past thirteen years and that the "medical records relevant to this case are those that concern Kutz's emotional health, not those that concern her physical health." (*Id.* at 39-40)

At the hearing, Defendants asserted that Plaintiff's counsel had not independently reviewed Plaintiff's medical records to verify whether or not her mental health was ever discussed during medical visits. (Dkt. 63 at 25:11-17.) Defendants stated that they were not limiting their request to records referencing Plaintiff's mental health based on Plaintiff's allegations of physical manifestations. (*Id.* at 25:18-27:11.)

Plaintiff claimed that the information Defendants seek can be obtained through a deposition and that her physical manifestations of emotional distress are clear and articulated in her mental health records that have been disclosed. (*Id.* at 50:13-23.)

In their supplemental brief, Defendants claim that Plaintiff refused to identify the physical emotional distress she attributes to them and that once those physical manifestations are identified, "Defendants agree that an appropriate compromise is for Kutz's counsel to review her medical records dating back to 2014 and produce all entries relating to her emotional health and those physical manifestations." (Dkt. 71 at 4.) Defendants claim that this reduces the timeframe for their requests to 1 year instead of 5 years before the alleged harassment and "entrusts Kutz's counsel with review of the records—rather than Kutz executing authorizations—provided there are guideposts in place to determine what records are relevant." (*Id.* at 5.) However, according to Defendants, Plaintiff's counsel refuses to "identify what physical manifestations of emotional distress they would be looking for—which begs the question of how their review will ensure relevant records are produced." (*Id.*) According to Defendants, Plaintiff's counsel claims Plaintiff cannot identify the manifestations before Plaintiff's deposition or her Rule 35 independent medical examination, which Defendants argue is unsubstantiated and prejudicial. (*Id.* at 5-6.) Defendants argued that absent Plaintiff's "specific identification of the physical manifestation of emotional distress [she] attributes to Defendants," they "stand by their request that Kutz execute authorizations for release of all of her medical records." (*Id.* at 6.)

Plaintiff responds that while she does not object to identifying physical manifestations of her mental health, it is improper and impractical to stipulate to those manifestations as requested by Defendants as such a stipulation would unnecessarily limit her in ways that a deposition, independent medical examination, or response to an

interrogatory would not.  (Dkt. 75 at 5.)  Plaintiff contends that she does not oppose reviewing her records to identify any physical manifestations of her mental health, but that because a stipulation would require Defendants' agreement, it would unnecessarily and arbitrarily limit her outside the typical parameters of discovery.  (*Id.* at 6.)  Plaintiff asserts that any review and production should date back to 2015, not 2014 as requested by Defendants.  (*Id.* at 4-5.)

### 2.    Analysis

The Court first sets forth the standard for the discoverability of medical records under Federal and Minnesota law.[1]

Under Federal law, the discoverability of medical records is governed by the relevancy standard of Rule 26 of the Federal Rules of Civil Procedure, not the "in controversy" standard required for an independent medical examination under Rule 35 the Federal Rules of Civil Procedure.  *See Sandoval*, 267 F.R.D. at 268-69.

Under Minnesota law, the medical privilege can waived as follows:

> If at any stage of an action a party voluntarily places in controversy the physical, mental, or blood condition of that party, a decedent, or a person under that party's control, such party thereby waives any privilege that party may have in that action regarding the testimony of every person who has examined or may thereafter examine that party or the person under that party's control with respect to the same physical, mental, or blood condition.

Minn. R. Civ. P. 35.03.  This waiver, however, is limited by Minnesota Rule of Civil Procedure 35.04, which provides only for disclosure of medical records related to the

---

[1]    No party argued that Illinois law applied or that the application of Illinois law would change the analysis.

condition at issue.  *See* Minn. R. Civ. P. 35.04; *see also In re Baycol Products Litig.*, 219 F.R.D. 468, 470 (D. Minn. 2003).

"The policy underlying Rule 35.03 is the full disclosure of all relevant medical evidence concerning plaintiff's health when he voluntarily puts his health in issue by bringing a lawsuit."  *Wenninger v. Muesing*, 240 N.W.2d 333, 336 (1976); *see also Younggren v. Younggren*, 556 N.W.2d 228, 233 (Minn. Ct. App. 1996) ("A patient waives his physician-patient privilege if the patient puts his physical or mental condition into controversy.  Minn. R. Civ. P. 35.03.  This waiver, however, only allows the opposing party to obtain access to the patient's medical records.  Minn. R. Civ. P. 35.04.").  Rule 35.03 is "consistent with the concept that medical privilege should exist as a shield, not a sword."  Minn. R. Civ. P. 35.03, advisory committee's note (1968).

Additionally, the Minnesota Supreme Court has held that a defendant has the right to present evidence that calls into question a claim of emotional damages under a Minnesota statutory cause of action, such as the MHRA.  *See Navarre v. S. Washington Cty. Sch.*, 652 N.W.2d 9 (Minn. 2002) (holding that "where a plaintiff seeks emotional damages under the [Minnesota Government Data Practices Act] and puts her emotional state at issue, the defendant should be allowed to introduce probative evidence of the plaintiff's preexisting condition, treatment and prognosis, including expert testimony and/or medical records, that is relevant to the plaintiff's claim for emotional damages"); *see also Njema v. Wells Fargo Bank, N.A.*, Civ. No. 13-519 (PJS/JSM), 2014 WL 12648466, at *4-6 (D. Minn. Nov. 4, 2014) ("Pursuant to *Navarre*, once a plaintiff has placed his emotional state at issue, Wells Fargo is entitled to discover and introduce

probative evidence of pre-existing conditions, treatment and prognosis, including the introduction of medical records relevant to the claim for emotional damages.").

In her Complaint, Plaintiff seeks, among others, damages for emotional distress, physical manifestations of emotional distress, and "other pain and suffering" under the MHRA. (Dkt. 1 at ¶¶ 176, 186, 196.) Based on the parties' supplemental briefing, the Court understands that Plaintiff's counsel does not oppose reviewing Plaintiff's non-mental health medical records and providing Defendants with records relating to the physical manifestations of emotional distress that Plaintiff attributes to Defendants. The parties, however, dispute whether such production should be made by way of a stipulation or through the regular discovery process and whether such review/production should date back to 2014 or 2015. (*See* Dkt. 72-4, Defs.' Ex. 14 at 2-3 (counsel's email chain regarding this dispute).)

The Court finds that disclosure of those physical manifestations and related medical records is necessary and relevant to the claims and/or defenses in this case. *Sandoval*, 267 F.R.D. at 266 (stating that defendants were entitled to discover "those medical records that reflect mental health issues, and *the manifestations of those mental health issues*" where plaintiffs testified about physical manifestations of emotional distress they allegedly suffered due to defendants' conduct). However, the Court agrees that a stipulation is not an appropriate mechanism for such disclosure. It is unclear to the Court whether Defendants have propounded discovery seeking identification of Plaintiff's physical manifestations of her alleged emotional distress. Defendants must either propound appropriate discovery to Plaintiff, or identify to Plaintiff which discovery

40

they believe seeks such identification, no later than within 2 weeks from the date of this Order.  Plaintiff must respond to such discovery stating fully what physical manifestations of emotional distress she attributes to Defendants within 30 days after service of the discovery (or identification of the relevant discovery) and, unless Plaintiff seeks a protective order as to specific medical records, must produce the medical records relating to those physical manifestations no later than 30 days after Defendants serve the discovery seeking such records (or identify the relevant discovery).

Given the nature of this case, Plaintiff's allegations, and the proposed compromise limiting the production to beginning in 2014, the Court orders that Plaintiff's production should encompass one year prior to the start of the alleged harassment, that is, from 2014 to present, in order for Defendants to adequately make their defense.  *See Laabs v. Nor-Son, Inc.*, Case No. 20-cv-1399 (PAM/ECW), 2021 WL 1609184, at *13 (D. Minn. April 26, 2021) (allowing defendant access to plaintiff's mental health records to encompass 5 years prior to the end of plaintiff's employment through the time the order was issued); *see also Sinigaglio*, 2018 WL 1806055, at *2 (ordering disclosure of medical records from 2010 through 2016 where the incident alleged in the complaint occurred in 2013); *Sandoval*, 267 F.R.D. at 269-270 (ordering plaintiffs to supplement their answers to defendants' interrogatory to identify all medical providers they visited for their diagnosis or treatments for ailments and physical or mental manifestations they suffered as a result of defendants' conduct and to provide executed authorizations to defendants based on that supplementation to encompass "the past ten years").

**D.**     **Text Messages, Emails, and Photographs Bearing on Plaintiff's Emotional State of Mind**

**1.**     **The Parties' Arguments**

Defendants originally asked the Court to order Plaintiff to produce "documents reflecting her emotions, feelings, and mental states, or relating to events that could reasonably be expected to produce a significant emotion, feeling, or mental state, from January 1, 2010 to the present." (Dkt. 43 at 43-46.) Defendants contended that Plaintiff has agreed to "produce her social media on these topics from the start of her employment at Apex to the present." (*Id.* at 43.) Specifically, Defendants sought: (1) Plaintiff's text messages, emails, and the photographs on her cell phone camera roll from 2010 to present; and (2) documents from social media from 2010 to 2015, in response to their Request No. 13 seeking "[a]ll documents, including social media, reflecting your emotions, feelings, or mental states since January 1, 2010" and Request No. 14 seeking "[a]ll documents, including social media, relating to events in your life that could reasonably be expected to produce a significant emotion, feeling, or mental state since January 1, 2010." (*Id.* at 43-44; *see also* Dkt. 45-5, Defs.' Ex. 5 at 10-11.) Relying on *Holter*, *supra*, Defendants claim that this information is relevant to Plaintiff's claim for emotional distress and that counsel can make judgment calls regarding responsive information; that "documents from sources other than Kutz's social media are relevant because it is evident that Kutz and her parents was discussing legal action against Defendants at least as early as November 2020"; that given the lengthy period at issue, it may be difficult for Plaintiff to recall other events occurring in her life; and that their

request is narrowly tailored to uncover other stressors in Plaintiff's life, including events that occurred shortly before she left Apex in 2019, that may have impacted her emotional health and for which Defendants are not responsible.  (Dkt. 43 at 44-46.)

Plaintiff responded that Defendants' Request No. 13 is overbroad, is a fishing expedition, is unbounded, and would lead to absurd results.  (Dkt. 50 at 40-44.)  Plaintiff also contends that Defendants' request is improper and drastically expands the reach of *Holter* by expanding its temporal and substantive scopes.  (*Id.* at 41; Dkt. 63 at 52:1-54:9.)  Plaintiff asserts that she has approximately 810,890 text messages and approximately 269,429 photographs on her phones, and argues that Defendants' request would create an unreasonably high burden on Plaintiff that would be nearly impossible to meet as it would require counsel to review "every single text message, email, or photograph in Plaintiff's possession for a thirteen-year period."  (Dkt. 50 at 41.)  Plaintiff contends that for example, Defendants' request would require Plaintiff to produce "every text message or email in which she answered the question 'how are you?'" over a thirteen-year period and that every photograph reflects her emotion at the time taken. (*Id.*)  Plaintiff asserts that Defendants' alternative theories for emotional distress does not entitle them to her entire personal life.  (*Id.* at 43.)

At the hearing, Defendants acknowledged that it is difficult to define messages and photos reflecting a person's mental state but argued that their request is relevant and proportional.  (Dkt. 63 at 27:20-31:5.)  Relying on *Holter*, Defendants contended that counsel should be entrusted to review Plaintiff's text messages, emails, and photographs with the use of technology or search terms to determine those materials that depict her

emotions, contending that it is no different from counsel reviewing social media posts and producing relevant information.  (*Id.*)  Plaintiff responded that social media is different because it permits captioning and that given the facts of this case, Defendants' request is inherently oppressive and harassing in and of itself.  (*Id.* at 52:1-55:9; 59:17-60:6.)

In their supplemental brief, Defendants state that they:

 [O]ffered to narrow their request to only seek this information for two week periods pre- and post-dating the "major" events identified in the Complaint. (Olawsky Ex. 14.) These include:

1. December 2018: Rapp allegedly picked Kutz up after she fell asleep on a couch in Breckinridge (Compl. ¶ 31);

2. April 2019: Sales partner insinuated that Plaintiff was having an affair with Rapp at a conference in Las Vegas (*id.* ¶ 32);

3. May 28, 2019 and November 7, 2019: Kutz's resignation from and return to Apex (*id.* at ¶¶ 37, 56);

4. August 26, 2020: Alleged assault (*id.* at ¶ 198); and

5. September 15, 2021: Alleged termination (*id.* at ¶ 134).

(Dkt. 71 at 8 ("Major Events").)  Defendants claim that this information is relevant to the veracity of Plaintiff's claims and her alleged damages and that it is "narrowly tailored to the events at the heart of this litigation, and proportional considering the damages sought and the lengthy timeframe of her allegations."  (*Id.*)

Plaintiff argues in her supplemental brief that production of her social media does not support Defendants' request to compel information reflecting her emotions, feelings, or mental state as her social media contains substantially less information and comes with

44

captioning or descriptions of the pictures posted, making it easier to determine if it reflects her emotions, feelings, or mental state. (Dkt. 75 at 7-8.) Plaintiff claims that Defendants' attempt to limit the information sought in their supplemental brief does not alleviate the disproportionate and burdensome nature of their request and that the information sought by Defendants is not relevant. (*Id.* at 8-9.)

### 2. Analysis

Both parties rely on *Holter* in support of their respective positions. In *Holter*, the court correctly recognized that "anything that a person says or does might in some theoretical sense be reflective of her emotional state," but explained "that is hardly justification for requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she may have talked to." 281 F.R.D. at 344 (quoting *Rozell v. Ross-Holst*, No. 05 Civ. 2936 (JGK) JCF, 2006 WL 163143, at *3 (S.D.N.Y. Jan. 20, 2006)). However, given that the plaintiff in *Holter* placed her employment with and termination of employment from the defendant, along with her mental disability and emotional state, at issue, the *Holter* court found that the defendant was "entitled to information from her social media websites that bears on th[o]se topics, including other stressors in plaintiff's life that could account for the emotional distress" she was claiming was due to defendant's actions. *Id.* (citing *EEOC v. Simply Storage Management*, 270 F.R.D. 430, 435 (S.D. Ind. 2010)). As a result, the *Holter* court ordered plaintiff's counsel to review and produce:

> [A]ll of plaintiff's social media context for the period of April 2005 (the date she alleges her problems with Wells Fargo began) to the present, and produce any content or communications that reveals or refers to: (1) any emotion,

feeling or mental state, including but not limited to any reference of depression, anxiety or mental disability; (2) to any events that could reasonably be expected to produce a significant emotion, feeling, or mental state; (3) defendant, plaintiff's employment at defendant or termination of employment from defendant; and (4) plaintiff's search for employment following her termination of employment from defendant.

*Id.*

Consistent with *Holter*, to the extent Defendants seek responsive documents from Plaintiff's social media from 2010 to 2015, the Court denies the motion as disproportionate to the needs of the case, including in view of the Court's ruling with respect to Plaintiff's medical records.

Turning to text messages, emails, and Plaintiff's camera roll, *Holter* did not speak to those communications and media, and the parties have not provided the Court with any case law directly on point as to searching those communications and media for the types of documents sought by Request Nos. 13 and 14. Nevertheless, the Court finds that in this case, by temporally limiting the text messages and emails sought to responsive documents within a 2-week time frame before and after the Major Events (*see* Dkt. 71 at 8), the discovery sought is proportionate to the needs of the case. The Court also finds that counsel can review text messages and emails to determine in good faith whether they are responsive to Requests Nos. 13 and 14, primarily because they contain text. As such, the Court orders Plaintiff's counsel to review Plaintiff's text messages and emails for the 2 weeks before and after the Major Events and produce documents responsive to Request Nos. 13 and 14 within 30 days from the date of this Order. *See Rozell*, 2006 WL 163143, at *3 (denying defendants' request for plaintiff's entire email communications and

finding plaintiff's counsel's production of emails potentially relating to her claim of emotional distress sufficient); *see also Mackelprang v. Fidelity Nat. Title Agency of Nevada, Inc.*, No. 2:06-cv-00788-JCM-GWF, 2007 WL 119149, at *7-9 (D. Nev. Jan. 9, 2007) (noting in a sexual harassment case that defendants were entitled to discover information relevant to plaintiff's alleged emotional distress and mental condition; denying without prejudice defendants' request for plaintiff's Myspace.com private messages but noting defendants could obtain those messages "that contain information regarding her sexual harassment allegations in this lawsuit or which discuss her alleged emotional distress and cause(s) thereof").

As to Defendants' request for photographs from Plaintiff's camera roll for the time period framing the Major Events, the Court is not persuaded that such discovery is proportionate to the needs of the case. Proportionality considerations include "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the Court is not persuaded that reviewing 20 weeks of camera roll photos is important to resolving the issue of Plaintiff's emotional distress, particularly in view of the production of Plaintiff's social media, text messages, and emails. Further, the burden of reviewing over a third of a year's worth of photos to determine if they are responsive to the requests at issue would outweigh the likely benefit. Indeed, the Court is unclear how a review of camera roll photos (as compared to social media, which typically has captions that provide context, or text and email messages that do the same) would be important or have any benefit. As a practical matter, this could easily devolve into side litigation about the

meaning and genuineness of a smile in a posed family photograph; whether a "duck face" selfie has a different meaning from a "fish gape"; and whether the fact that several photos were taken at an event that could "reasonably be expected to produce a significant emotion, feeling, or mental state," but none were sent to any other person, has any particular relevance to the plaintiff's emotional state at the time of the event. In sum, the Court denies Defendants' request insofar as they seek production of responsive photos from Plaintiff's camera roll. This does not mean, however, that Plaintiff need not produce photos sent with her emails, posted to her social media, or sent in a text chain to the extent they are responsive to Request Nos. 13 and 14 and were sent or posted within the 2015 to the present timeframe.

### E.   Attorneys' Fees for Bringing the Motion

The Court turns to Defendants' request for attorneys' fees under Rule 37(a)(5). (Dkt. 43 at 47.)

> Under Rule 37(a)(5)(A),
>
> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

Here, given that the Court has granted in part and denied in part Defendants'
motion and the parties' post-hearing compromises, the Court finds that it would be unjust
to award Defendants their attorneys' fees.  However, the Court reminds the parties of
their obligation to fully meet and confer before filing a discovery motion and also that it
is prudent to compromise **before** a motion is filed.  Otherwise, in the future, the Court
may well apportion fees pursuant to Rule 37(b)(5)(C).

## IV.    ORDER

For the reasons stated above, and based upon all the files, records, and proceedings
herein, **IT IS ORDERED THAT**: Defendants' Motion to Compel Discovery (Dkt. 42) is
**GRANTED in part and DENIED in part** as set forth in this Order.


DATED: June 2, 2023                              *s/Elizabeth Cowan Wright*
                                                 ELIZABETH COWAN WRIGHT
                                                 United States Magistrate Judge

49