## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Allison Kutz,

        Plaintiff,

v.

NGI Capital, Inc. *doing business as* Apex
IT and Eric Christopher Rapp,

        Defendants.

Case No. 22-cv-1623 (NEB/ECW)

**ORDER**

---

This matter is before the Court on Defendants' Motion to Amend Answer to Plead Counterclaims and Extend the Discovery Deadline (Dkt. 145). After the hearing on the Motion to Amend, the Court ordered Defendants to file a supplemental declaration attaching the Salesforce productions referenced in the Dorr Declaration (Dkt. 148), indicating which documents were received on which date, and to file any supplemental briefing with respect to those additional exhibits. (Dkt. 193.) The Court also gave Plaintiff the opportunity to respond that supplementation. (*Id.*) Supplemental briefing has been completed and the Motion to Amend is now ripe for a decision. (Dkts. 194-198.)

For the reasons stated below, the Motion to Amend is denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   General Background

On June 21, 2022, Plaintiff Allison Kutz ("Plaintiff" or "Kutz") initiated this employment discrimination, retaliation, and assault case under Title VII of the Civil Rights Act, the Minnesota Human Rights Act ("MHRA"), and Minnesota and Illinois common law.  (Dkt. 1.)  Kutz alleges that she initially began working for Defendant NGI Capital, Inc. doing business as Apex IT ("Apex") in October 2015 as a Practice Director, and that within her first year of employment, Defendant Eric Christopher Rapp ("Rapp"), the Chief Executive Officer at Apex, began sexually harassing her, leading to her resignation in May 2019.  (*Id.* ¶¶ 13-15, 37.)  Kutz alleges that upon receiving assurances from the Executive Vice President at Apex that the company was instituting changes to improve its work environment, including by hiring a human resources professional, she agreed to return to her former role at Apex in November 2019.  (*Id.* ¶¶ 38-57.)

Kutz alleges that about 6 months after she returned, Rapp again began sexually harassing her and she refused his advances, leading to her termination in September 2021.  (Dkt. 1 ¶¶ 57-58, 125-139.)

Following her termination on or around September 15, 2021, Kutz began her employment at non-party Salesforce.  (Dkt. 154 ¶ 4.)  Kutz currently works at Salesforce and was employed there between her two periods of employment with Apex.  (Dkt. 148 ¶ 2.)

### B.   Procedural Background

On July 27, 2022, Defendants filed a Motion to Dismiss.  (Dkt. 11.)

On October 11, 2022, this Court issued a Scheduling Order establishing a December 1, 2022 deadline to amend the pleadings or add parties.  (Dkt. 28 at 4.)  In addition, the Court ordered that fact discovery must be commenced in time to be completed by June 15, 2023 and set a deadline for all nondispositive motions to be filed and served on or before June 29, 2023.  (*Id.* at 2.)  Discovery was not stayed pending a decision on the Motion to Dismiss.

Maggie Kutz ("Maggie") is Plaintiff's sister.  (Dkt. 148 ¶ 2.)  Maggie currently works at Salesforce and worked there during Plaintiff's employment with Apex. (*Id.*)  Defendants subpoenaed documents from Maggie on October 18, 2022, and she produced documents on November 7, 2022; January 13, 2023; April 18, 2023; May 8, 2023; and March 1, 2024.[1]  (Dkt. 154 ¶ 7; *see also* Dkt. 148 ¶ 3.)

Defendants served their first set of Requests for the Production of Documents ("RFP Set I") on Plaintiff on October 14, 2022.  (Dkt. 154 ¶ 16.)  On November 14, 2022, Plaintiff served her initial responses to the RFP Set I on Defendants.  (*Id.* ¶ 17.)  On November 21, 2022, Plaintiff produced her first set of documents to Defendants. (*Id.* ¶ 5.)  This production included the emails that Defendants claim give rise to their after-acquired evidence affirmative defense (discussed *infra*), in which they claim Plaintiff improperly shared Apex's confidential information.  (*See* Dkt. 148-2, proposed counterclaim ¶ 58).)

---

[1]    The parties did not provide a copy of this subpoena or documents produced in response to this subpoena to the Court.

Plaintiff then served Amended Responses to the RFP Set I on January 13, 2023, including to Request Nos. 9, 18, and 19.  (Dkt. 154 ¶ 18.)  Plaintiff's initial response to Request No. 26 and amended responses to Request Nos. 9, 18, and 19 were as follows:

> **REQUEST NO. 26**: Your personnel files from all employment you have held outside of Apex since 2019.
>
> **RESPONSE**: Plaintiff objects to this Request as harassing, invading Plaintiff's privacy, and as serving no legitimate purpose in this litigation. Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege or work product doctrine. Plaintiff objects to this Request as overly broad in subject matter in that it requests internal documents from Plaintiff's employers, which are not in Plaintiff's custody or control. Subject to, and without waiving these objections, Plaintiff responds as follows: Plaintiff will produce relevant, responsive, and non-privileged documents and ESI in her possession and/or control. See Plaintiff's produced documents. Discovery is continuing.
>
> * * *
>
> **REQUEST NO. 9**: Your communications with any current or former Apex employee discussing Apex's business, your current employment, or a potential lawsuit against Apex.
>
> **AMENDED RESPONSE:** Plaintiff objects to this Request as overly broad and lacking in reasonable particularity. Plaintiff objects to this Request as vague and overly broad as there is no temporal limitation. Plaintiff objects to this Request as vague and overly broad as to subject matter, as the topics requested are, in large part, unrelated, and "communications with any current or former Apex employee discussing" Plaintiff's "current employment" is not relevant to this case. Plaintiff objects to this Request as it seeks documents and ESI in Defendants' possession and/or control. Plaintiff further objects to this Request as seeking information that is duplicative of other Requests. Subject to and without waiving these objections, Plaintiff responds as follows: Plaintiff will produce relevant, responsive, and non-privileged documents and ESI in her possession and/or control, including:
>
> - Communications with any current or former Apex employee discussing the potential lawsuit against Apex, and Plaintiff affirmatively states that she is not knowingly withholding information related to this sub-Request.

- Communications with any current or former Apex employee discussing her current employment, and Plaintiff affirmatively states that she is not knowingly withholding information related to this sub-Request.
- Plaintiff will only produce communications with any current or former Apex employee discussing Apex's business if that information is related to the allegations, claims, defenses, or damages in this case, as communications related to common or day-to-day business matters are irrelevant and overbroad, and, further, Skype and email communications are in Defendants' custody and/or control.

See Plaintiff's produced documents. Discovery is continuing.

**REQUEST NO. 18:** Your communications regarding or referring to Apex or Rapp following your separation of employment, including with any Apex business partner such as Oracle or Salesforce.

**AMENDED RESPONSE:** Plaintiff objects to this Request as overly broad and lacking in reasonable particularity as to subject matter, including because Apex is in the same professional industry as Oracle and Salesforce. Plaintiff also objects to this Request as it is unclear what timeframe Defendants are referring to when stating "following your separation of employment." Plaintiff objects to the extent this Request seeks information protected by the attorney-client privilege and/or the work product doctrine. Plaintiff further objects to this Request as seeking information that is duplicative of other Requests. Subject to and without waiving these objections, Plaintiff responds as follows: Plaintiff will produce relevant, responsive, and non-privileged documents and ESI in her possession and/or control following her separation from Defendant Apex in 2019 and her termination from Defendant Apex in 2021, but objects to producing information from her employment that references Defendants, to the extent it exists, unless that information relates to the allegations, claims, defenses, or damages in this case. Plaintiff also notes that she disclosed a conflict of interest related to Apex with her current employer, which has been produced as KUTZ0001600-1601. Plaintiff affirmatively states that she is not knowingly withholding information otherwise related to this Request. *See* Plaintiff's produced documents. Discovery is continuing.

**REQUEST NO. 19:** Your communications with any Apex employee while you were not employed by Apex in 2019, and following your separation of employment in 2021.

**AMENDED RESPONSE:** Plaintiff objects to this Request as overly broad and lacking in reasonable particularity as there is no limitation on subject matter. Plaintiff objects to this Request as it seeks documents not relevant to

the claims and defenses in this case, and is thereby not proportional to the needs of the case. Plaintiff objects to this Request as it seeks documents and ESI in Defendants' possession and/or control. Plaintiff objects to this Request as seeking information that is duplicative of other Requests. Subject to and without waiving these objections, Plaintiff responds as follows: Plaintiff will produce relevant, responsive, and non-privileged documents and ESI in her possession and/or control, including communications with any Apex employee about the allegations, claims, defenses, or damages in this case, including her separation and return from Apex in 2019 and her termination from Apex in 2021. Plaintiff will not produce every communication with every Apex employee over multiple years if those communications are unrelated to the allegations, claims, defenses, or damages in this case, as that information is irrelevant, overbroad, and disproportionate to the needs of the case. *See* Plaintiff's produced documents. Discovery is continuing.

(Dkt. 154 ¶ 18.)

On March 2, 2023, United States District Judge Nancy E. Brasel denied Defendants' Motion to Dismiss. (Dkt. 37.)

On March 15, 2023, Defendants filed their Answer to the Complaint.[2] (Dkt. 41.) As part of their Answer, Defendants asserted the following affirmative defense: "Kutz's alleged claim for damages is barred by the doctrine of after-acquired evidence." (*Id.* at 30.) At the hearing on the instant Motion, Defendants' counsel represented that in November 2022, Plaintiff made a production that included documents showing she was using her personal Gmail account while employed by Apex to send confidential information to a friend who worked at a competitor (not Salesforce), which included highly confidential spreadsheets that Apex only obtained through a confidentiality agreement. Counsel also represented that while Defendants received that information in

---

[2]    The Court notes that Defendants had sought to stay answering the Complaint pending the Motion to Dismiss, which Judge Brasel denied as moot. (*See* Dkt. 37.)

November of 2022, Defendants elected not to pursue any claims against Plaintiff for that conduct because while that conduct violated policy, it was not obvious what damages Defendants had incurred as a result.

On March 15, 2023, Defendants brought a Motion to Compel (Dkt. 42), seeking in part, Plaintiff's personnel files from Salesforce, claiming they were relevant to damages and other defenses.  (Dkt. 43 at 33.)  Plaintiff had objected to producing her personnel file from Salesforce, and other Salesforce communications about Apex or Rapp (asserting that they were outside of her control).  (Dkt. 154 ¶¶ 16-19.)  Defendants did not seek to compel those communications as part of their Motion to Compel.  (*Id.*; *see also* Dkt. 43 at 33-35 (seeking Salesforce records but not communications).)

On May 8, 2023, the Court issued the following Order: "The deadline for non-dispositive motions relating to documents remains June 29, 2023.  The Court will set deadlines for fact depositions and expert discovery after ruling on Defendants' motion to compel (Dkt. 42) and Plaintiff's motion to amend (Dkt. 56)."  (Dkt. 74.)  The Court did not extend the deadline for fact discovery generally and did state that: "The deadline for document production remains June 15, 2023."  (*Id.*)

On June 2, 2023, this Court granted in part Defendants' Motion to Compel, including with respect to Request No. 26 as follows:

> As such, Defendants' request is granted to the extent they seek information relating to Plaintiff's qualifications for employment, promotion, transfer, additional compensation, discharge, or other disciplinary action while at Salesforce to the extent Plaintiff can obtain such information by requesting her Salesforce personnel file pursuant to the Illinois Open Records Act. Plaintiff must request her personnel file under the Illinois Open Records Act within 2 weeks from the date of this Order and produce documents relating

7

to her qualifications for employment, promotion, transfer, additional compensation, discharge or other disciplinary action within 30 days after she receives the file. However, to the extent Defendants seek information about Plaintiff's allegation in the Complaint that "Apex, presumably at Rapp's insistence, has also failed to confirm her employment with Apex for purposes of Plaintiff's attempts to secure new employment, causing her to fail an employment background check" (Dkt. 1 ¶ 140), Defendants have not identified any discovery request to which this information is responsive, as the Court understands this allegation does not relate to Plaintiff's Salesforce employment. The Motion is denied insofar as Defendants ask for an order compelling production of this information, although nothing in this Order precludes Defendants from serving discovery directed to this issue.

(Dkt. 78 at 33-34.) Following the Court's Order, Plaintiff supplemented her response to

Request No. 26:

> **RESPONSE:** Pursuant to the Court's Order, Plaintiff will produce documents relating to her qualifications for employment, promotion, transfer, additional compensation, discharge, or other disciplinary action relating to her employment at Salesforce. Consistent with the Parties' agreement, Plaintiff has requested her employee files from Salesforce by way of an internal request through Salesforce Employee Services for her employment in 2019 and her current employment, which began in 2021 and will produce those records in Plaintiff's forthcoming document production. Plaintiff has also requested her personnel file by way of the Illinois Personnel Record Review Act, 820 Ill. Comp. Stat § 40/2, and will produce any additional, responsive information consistent with the Court's Order.

(Dkt. 154 ¶ 20.)

On June 12, 2023, the Court extended the fact discovery deadline with respect to

certain unrelated outstanding discovery to June 29, 2023, and extended the non-

dispositive motion deadline to July 13, 2023. (Dkt. 82.)

On July 13, 2023, the Court notified the parties that it would set a new dispositive

motion deadline after ruling on Plaintiff's anticipated discovery motion and Plaintiff's

pending motion to amend. (Dkt. 85.) No other mention was made of modifying the Scheduling Order.

During her August 2023 deposition, Defendants questioned Plaintiff about the emails on which Defendants base (at least in part) their after-acquired evidence defense. (Dkt. 154 ¶ 6.)

On August 31, 2023, the Court extended the time for Apex to produce documents as ordered by the Court to September 30, 2023, but stated that "[a]ll other deadlines remain unchanged." (Dkt. 112.) At this point in time, "[a]ll other deadlines" included the June 13, 2023 deadline for document production, which at most had been extended to June 29, 2023. (*See* Dkt. 28 at 2; Dkt. 74; Dkt. 82.)

On October 2, 2023, the Court allowed a limited extension of time with respect to discovery, until October 2, 2023, to have Apex produce any Skype messages. (Dkt. 125.) Nothing in the October 2, 2023 Order otherwise modified the deadline for document production.

Maggie was deposed on December 14, 2023. (Dkt. 154 ¶ 8.) According to Defendants' counsel, they learned the following from Maggie's deposition:

> Maggie Kutz had filed an internal complaint at Salesforce regarding Defendants, which was never disclosed nor produced to Defendants[.] Maggie Kutz testified that the point of making the complaint was that she did not think Salesforce should do business with Apex. (Maggie Kutz Dep. 32, 55.) Maggie Kutz also testified "I think that Chris [Rapp] should never be able to work in this industry" and "I think that Chris should have no part of Apex. And if that means that that company is destroyed, then yes, I think that Apex should no longer exist." (Maggie Kutz Dep. 270.) Maggie Kutz never produced this complaint.

(Dkt. 148 ¶ 4.)

9

In January 2024, Defendants issued their first subpoena to Salesforce, months after the deadline for document production and well after any extensions granted by the Court with respect to specific written discovery, seeking the following:

> All records relating to concerns raised by, or an internal complaint made by, SalesForce employee Margaret (Maggie) Kutz regarding Defendants NGI Capital, Inc. d/b/a Apex IT and/or Eric ("Chris") Rapp, including investigation notes, complaints, and summaries.

(Dkt. 154-1.)  In response, on February 8, 2024, Salesforce produced a single email from Maggie's Salesforce email account sent to legal compliance that alleged an ethics violation of an unnamed Salesforce partner:

> A systems integration partner of ours [sic] CEO currently has a pending sexual assault and harrassment [sic] trial because of a lawsuit that was filed against him. Because of this pending trial, and the charges brought against him, and as I have been witness to this behavior numerous times I'd like to ensure I report this the correct way to protect other women at Salesforce.

(Dkt. 196-1 at 2; *see also* Dkt. 148 ¶ 7.)  Salesforce did not produce any further documents on the basis of privilege.  (Dkt. 148 ¶ 7.)

On February 16, 2024, Defendants sent a letter to Maggie's counsel demanding production of the complaint and to ensure all responsive documents were produced. (Dkt. 148 ¶ 9.)  On March 1, 2024, Maggie's counsel responded to Defendants' letter and took the position that communications through her Salesforce email account were "outside of her control and in the legal possession and control of Salesforce" and that such communications needed to be obtained from Salesforce directly.  (Dkt. 148 ¶ 10.)

On March 5, 2024, Salesforce produced a privilege log indicating that Maggie participated in an interview responsive to the subpoena and that notes were taken. (Dkt. 148 ¶ 11; Dkt. 196-2 at 2.)

Salesforce ultimately produced a copy of Maggie's complaint interview notes on June 4, 2024. (Dkt. 148 ¶ 13; Dkt. 196-3 at 2-12; Dkt. 197-2 at 2-3.) These redacted notes contained details from Maggie regarding Rapp and Apex's alleged conduct against herself and Plaintiff.

On June 12, 2024, this Court held a status conference with the parties. (Dkt. 140.) The Court ordered as follows in conjunction with the status conference: "The parties are directed to contact Judge Brasel[']s chambers by joint email regarding their anticipated cross-motions for partial summary judgment. They also must file a joint motion regarding the schedule **that states what discovery remains** and contains a proposal for post-summary judgment settlement discussions." (*Id.* (emphasis added).) During that call with the Court, Defendants made explicit mention of concerns regarding another subpoenaed third party, Nicole Spivak, but did not raise any concern relating to any other outstanding information, such as Salesforce's response to the subpoena. (Dkt. 154 ¶ 10.)

According to Defendants' counsel, based on the content of Maggie's complaint to Salesforce, and Defendants' understanding that neither Plaintiff nor Maggie had reviewed or produced relevant and responsive documents from their Salesforce accounts, claiming that they were outside of their control, Defendants issued a second subpoena to Salesforce on June 27, 2024. (Dkt. 148 ¶ 14.) The June 27, 2024 subpoena to Salesforce sought the following:

Custodians: Employees Allison Kutz & Margaret (Maggie) Kutz Search Parameters: All emails or messages sent/received on any platform (Teams, Slack, Skype, Google Chat, etc) containing "Apex" or "Rapp" from 9/1/21 to present. Produce the full conversation for each search hit.

(Dkt. 154-2.)

On June 28, 2024, the parties filed a Joint Motion for Proposed Case Management

Order (Dkt. 142), making the following representations to Judge Brasel and seeking the

following relief:

1. The Parties have substantially completed discovery, but are working together in good faith to finalize and resolve certain outstanding topics, including:

   a. Obtaining and reviewing information from third party subpoenas;
   b. Conducting a few remaining depositions;
   c. Completing all document productions; and
   d. Supplementing earlier discovery.

2. The Parties believe that the remaining discovery can be completed by July 31, 2024.

(Dkt. 142 at 1.)  They did not request an extension of the deadlines for motions to amend

or other nondispositive motions, although they did address dispositive motion deadlines.

(*Id.* at 1-2.)

On July 8, 2024, Judge Brasel extended the deadline for completion of fact

discovery to July 31, 2024.  (Dkt. 144.)  She did not extend the deadline for motions to

amend or other nondispositive motions, although she did address deadlines for partial

summary judgment briefing.  (Dkt. 144.)

On July 11, 2024, Salesforce produced 81 pages of documents to the parties in

response to Defendants' second subpoena.  (Dkt. 196-4 at 67-82.)  The majority of the

communications are internal Salesforce instant messages and some appear to deal with

Kutz's assertion of sexual harassment by Rapp, as well as competitive activities involving Apex.  (*See, e.g.*, Dkt. 196-4 at 21, 53-54.)

On July 31, 2024, Defendants filed the present Motion to Amend.  (Dkt. 145.) Defendants seek an order permitting them to amend their Answer to plead counterclaims against Plaintiff for breach of contract, tortious interference with prospective business relations, and defamation; and to extend the discovery deadline to permit discovery into the proposed Counterclaims.[3]  (*Id.*)

**B.    Proposed Counterclaims**

Defendants seek to add the following proposed counterclaims to their Answer:

**COUNTERCLAIM I**
**BREACH OF CONTRACT**
**By Apex IT**

66. Kutz and Apex entered into a binding contract—i.e., the Confidentiality and Inventions Agreement ("Agreement").

67. Kutz signed the Agreement on November 5, 2019.

68. The Agreement was incorporated into her offer letter and was a material condition of Apex IT allowing Kutz to return to Apex IT in the fall of 2019.
69. Pursuant to the Agreement, Kutz promised not to divulge or disclose any Apex IT confidential information during or after her employment.

70. The Agreement defines confidential information to include "the identity of customers and potential customers, the requirements and specifications of customers and potential customers, contracts with customers and other information regarding customers and potential customers, information regarding active and inactive accounts, markets, fees, sales, margins, pricing or purchasing information."

---

[3]    The parties filed Partial Motions for Summary Judgment in August 2024.  (Dkts. 155, 166.)  Judge Brasel heard argument on those Partial Motions on November 18, 2024 and took them under advisement.  (Dkt. 208.)

71. Kutz breached that confidentiality provision by, among other things: (1) forwarding confidential information outside of Apex IT, including to a competitor; (2) sharing competitive information with her sister, who was competing for the same business at Salesforce; and (3) sharing competitive and confidential information to Salesforce and customers about Apex IT in an attempt to cause Apex IT to lose business opportunities.

72. The confidentiality provisions survive the termination of Kutz's employment with Apex IT.

73. The Agreement provides that Apex IT is entitled to injunctive relief in the event of a breach, and that Kutz will be responsible for all attorneys' fees and costs incurred by Apex IT "in any action to enforce the provisions of this Agreement or to seek a remedy, including injunctive relief, for Employee's breach of any provision of this Agreement."

74. As a result of Kutz's unlawful actions, Apex IT has suffered and continues to suffer damages, including but not limited to, lost revenue and profits, out of pocket expenses, and reputational damages, in an amount in excess of $75,000. Apex IT is also entitled to attorney's fees and costs under the Agreement.

## COUNTERCLAIM II
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
## By Apex IT

75. Apex IT had a prospective business relationship with ABC Customer and an existing and prospective business relationship with Salesforce.

76. Kutz knew about Apex IT's prospective business relationship with ABC Customer, and about its business relationship with Salesforce.

77. Kutz intentionally and wrongfully interfered with those relationships by spreading false information about Rapp and Apex IT, divulging confidential and trade secret information she had no right to divulge, and acting to deliberately sabotage Rapp's and Apex IT's business relationships.

78. Apex IT lost its prospective business relationship with ABC Customer entirely, and its business relationship with Salesforce was diminished due to Kutz's conduct.

79. Kutz acted maliciously, with the specific intent of harming Rapp and Apex IT.

80. As a result of Kutz's unlawful actions, Apex IT has suffered and continues to suffer damages, including but not limited to, lost revenue and profits, out of pocket expenses, and reputational damages, in an amount in excess of $75,000.

**COUNTERCLAIM III**
**DEFAMATION**
**By Eric Christopher Rapp and Apex IT**

81. Kutz has made untruthful statements about Apex IT and Rapp in an attempt to damage Rapp's and Apex IT's reputations and to harm them financially.

82. Kutz has falsely informed people in the industry that Rapp is under a criminal investigation.

83. Kutz has falsely informed people in the industry that Rapp engaged in egregious sexual harassment, and sexual assault, which is untrue.

84. Kutz has directed people to her Complaint against Rapp and Apex IT, which falsely alleges "assault" and falsely alleges that Rapp picked her up against her will and that she "screamed" to get him to stop. Kutz has admitted that the latter statement, and other allegations in her Complaint, were false in her deposition.

85. Kutz has disparaged Apex IT repeatedly in her position at Salesforce, exaggerating any issues they have had with customers and generally disparaging their services in an attempt to get customers not to hire Apex IT.

(Dkt. 148-2, proposed counterclaims ¶¶ 66-85.)

**II.    LEGAL STANDARD**

Defendants' Motion to Amend is generally governed by Rules 15 and 16 of the

Federal Rules of Civil Procedure and Local Rule 16.3 of the Local Rules for the District

of Minnesota.

A.    **Rule 15**

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give

leave [to amend] when justice so requires."  The determination as to whether to grant

leave to amend is entrusted to the sound discretion of the trial court.  *See, e.g.*, *Niagara of*

*Wisc. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th

Cir. 1986) (citation omitted).  The Eighth Circuit has held that although amendment of a

pleading "should be allowed liberally to ensure that a case is decided on its merits . . .

there is no absolute right to amend."  *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647,

650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989);

*Chesnut v. St. Louis Cnty.*, 656 F.2d 343, 349 (8th Cir. 1981)).

Denial of leave to amend may be justified by "undue delay, bad faith on the part of

the moving party, futility of the amendment or unfair prejudice to the opposing party."

*Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371

U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953,

955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a

complaint may be justified if the amendment would be futile.").[4]

B.    **Rule 16**

Under Rule 15(a), leave to amend should be granted liberally, if "justice so

requires."  However, the Eighth Circuit has held that when a party has filed a motion to

amend the complaint after the deadline provided in a court's pretrial scheduling order,

---

[4]    The Court notes that Plaintiff has made no futility argument.

then the court may properly require, pursuant to Federal Rule of Civil Procedure 16(b), that good cause be shown for leave to file a pleading that is out of time with that order. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (citing *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999)).  "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."  *In re Milk Prod. Antitrust Litig.*, 195 F.3d at 437-38 (citation omitted).

Scheduling orders pursuant to Rule 16(b)(1) "assure[ ] that at some point both the parties and the pleadings will be fixed . . . ."  Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment.  Moreover, "Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'"  *Archer Daniels Midland v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).  Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Similarly, Local Rule 16.3 requires a party moving to modify a scheduling order to "establish good cause" for the proposed modification.  Further, regarding the timing of when such a motion must be made, Local Rule 16.3(d) states, "[e]xcept in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order.  The hearing itself may take place after the deadline."

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716-17 (8th Cir. 2008) (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024) ("The movant's diligence in attempting to meet the case management order's requirements is the 'primary measure' of good cause."), *reh'g denied*, No. 22-2250, 2024 WL 1561617 (8th Cir. Apr. 11, 2024); Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation omitted).

While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, the Court will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). In short, Rule 16(b) focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses,

inclusive or inadvertence and neglect, which commonly undergird an untimely Motion to Amend." *Scheidecker*, 193 F.R.D. at 632 n.1 (citations omitted).

With these standards in mind, the Court turns to Defendants' Motion to Amend.

### III.    ANALYSIS

Defendants argue that the facts and procedural posture in this case support a finding of good cause, as they diligently pursued written discovery and document productions in this case, and diligently sought documents from Salesforce after Plaintiff and Maggie "claimed—for the first time this spring—that messages sent through their work accounts were not in their possession." (Dkt. 147 at 8.)  Defendants assert that Plaintiff and Maggie only "stumbled upon this limitation" after Maggie testified about her internal Salesforce complaint, which had not yet been produced in discovery.  (*Id.* at 8-9.)  According to Defendants, the documents they ultimately obtained from Salesforce on July 11, 2024 represent good cause to amend the Scheduling Order, as those documents revealed the extent of Plaintiff's unlawful conduct, revealed inconsistencies in her discovery responses, and confirmed that relevant and responsive information is contained on Salesforce's systems.  (*Id.* at 9.)  Defendants take the position that these new claims are intertwined with the allegations and defenses already in the case, and will serve to offset any relief Plaintiff may receive as part of her Complaint.  (Dkt. 194 at 3-4.)  With respect to Rule 15, Defendants contend that none of the factors weighing against amendment—undue delay, bad faith, dilatory motive, repeated failures to cure

deficiencies, undue prejudice to the non-moving party, or futility—are present here. (Dkt. 147 at 8-11.)

Plaintiff counters that Defendants did not act diligently with respect to bringing the present Motion to Amend, given that the deadline to amend pleadings was December 1, 2022. (Dkt. 153 at 12.) Plaintiff also claims that Defendants concede they knew about the basis for part of their counterclaims due to an email she produced on November 21, 2022, as evidenced by their own counterclaims. (*Id.* at 12-13.) Plaintiff also emphasizes that Defendants did not act with diligence in seeking the Salesforce records that Defendants now assert give rise to the majority of the new proposed counterclaims. (Dkt. 198 at 3-5.) She argues that Defendants' lack of diligence is shown by their failure to seek Salesforce documents after Plaintiff responded to Defendants' request for communications referring to Rapp or Apex on November 14, 2022 by taking the position in that response that such communications were not in her possession or control. (*Id.* at 1-2 (citing Dkt. 45-5 (Plaintiff's Responses to RFP Set I)); *see id.* at 3-4.) Plaintiff argues that Defendants' lack of diligence is further demonstrated by their failure to move to compel Plaintiff or Maggie to produce communications sent using their Salesforce email even though they moved to compel other Salesforce information (Plaintiff's personnel file) on March 15, 2023. (Dkt. 198 at 2.) Plaintiff further relies on the fact that Defendants waited over two years to seek the information via subpoena from Salesforce. (Dkt. 198 at 3.) Plaintiff also argues that Defendants' explanation that Maggie's interview notes led to the Second Subpoena lacks credence, as there is no evidence in

these notes that Plaintiff asked her sister to make a complaint,[5] and there is no link

between the interview notes and the Second Subpoena. (*Id.* at 4.) Plaintiff also refers to

the prejudice of having to add new claims when her employment claims are before the

Court on dispositive motions and close to trial. (Dkt. 153 at 16.) In addition, Plaintiff

argues that the request for an extension of the discovery deadline fails to meet the good

cause requirement of Rule 16 and procedural requirements of Local Rule 16.3(b). (*Id.* at

27-35.)

With respect to Rule 15, Plaintiff argues that the new counterclaims should not be

added due to Defendants' undue delay in seeking to bring them, the prejudice the new

claims would cause, and on the basis that are prompted by Defendants' bad faith or

dilatory motives. (*Id.* at 17-26.)

## A.    Rule 16 Analysis - Proposed Breach of Contract Counterclaims Involving Plaintiff's Alleged Conduct While Employed at Apex

The Court concludes that there is no good cause under Rule 16 to allow

Defendants to amend the scheduling order to permit them to amend their Answer and

assert a counterclaim for breach of contract alleging that Kutz violated the confidentiality

provisions of the Confidentiality and Inventions Agreement ("Agreement") she had with

Apex. This proposed counterclaim alleges that Plaintiff breached that Agreement by,

among other things: (1) forwarding confidential information outside of Apex IT,

---

[5]    The Court notes that the proposed counterclaim does allege that based on "[u]pon information and belief, Kutz encouraged Maggie Kutz to make these complaints to Salesforce." (Dkt. 148-2 ¶ 41.). There is no categorical prohibition against a claim that rests on allegations pleaded on information and belief. *See Cole v. Does*, 571 F. Supp. 3d 1033, 1040 (D. Minn. 2021).

including to a competitor; [and] (2) sharing competitive information with her sister, who was competing for the same business at Salesforce . . . ."  (Dkt. 148-2, Counterclaims ¶ 71.)  The Court finds no good cause because Defendants did not act diligently in asserting this claim when they first learned of the alleged breaches.  Indeed, Defendants concede in the proposed counterclaim they possessed the information regarding these breaches earlier in discovery:

> 58.  **Earlier discovery revealed that**, while still an Apex employee, Kutz forwarded highly sensitive spreadsheets containing tens of thousands of lines of competitive sales information to a friend of hers who works for a competitor. This revelation is what lead to Apex IT's "after acquired evidence" defense.

> 59.  Additionally, the Kutz sisters exchanged confidential, competitive information when Kutz was employed by Apex IT and Maggie Kutz was employed by Salesforce. Salesforce was pitching a project and Apex IT was assisting another software vendor with the same pitch. After the customer made a decision to proceed with Salesforce, Maggie Kutz shared that information with Kutz (in violation of her confidentiality obligations), and then Kutz informed the Apex IT software vendor (in violation of her confidentiality obligations). The breach of confidentiality made it back to the customer, which resulted in an embarrassing situation for Apex IT. It also resulted in Apex IT being excluded from bidding on the Salesforce work, and Rapp having to apologize to the Chief Information Officer of the customer.

> 60.  **While the two prior discoveries were alarming to say the least, Apex IT declined to file a counterclaim earlier since it appeared that the conduct was isolated and damages were less quantifiable**.

(Dkt. 148-2, proposed counterclaims ¶¶ 58-60) (emphases added).)

Indeed, Defendants learned about these potential claims as early as November 2022.  (*See* Dkt. 153 at 5 (citing Dkt. 148-2, proposed counterclaim ¶ 58).)  Yet, they inexplicably waited approximately a year and eight months to add the claims, even though—in their own words—Kutz's actions "were alarming to the say the least."

Defendants had this information in November 2022, before filing their initial Answer in March 2023. (Dkt. 41.) It is true that the deadline to amend the pleadings had passed by that time. (Dkt. 28 at 4.) But Defendants' decision to wait until July 2024 to assert a counterclaim for breach of the Agreement, and their decision not to include that counterclaim in their initial Answer—when they possessed much of the information needed to support such a counterclaim—weighs against a finding of good cause. *See Dolphin Kickboxing Co. v. FranChoice, Inc.*, No. 19-CV-1477 (MJD/ECW), 2020 WL 12849103, at *10 (D. Minn. Nov. 25, 2020) ("In sum, while some evidence may have been available after the January 18, 2020 cut-off for motions to amend, the key evidence on which Plaintiffs rely was available months before the motion to amend deadline expired. Consequently, the failure of Plaintiffs to move to amend for more than half a year (or to seek an extension of time to amend) demonstrates a lack of diligence incompatible with good cause under Rule 16."); *Moldex Metric, Inc. v. 3M Co.*, No. 14-cv-1821 (JNE/FLN), 2016 WL 845264, at *2 (D. Minn. Mar. 4, 2016) ("Although documents were produced and depositions took place after July 1, a substantial portion of the evidence on which Moldex Metric relied to support its second motion was available to it months before July 1 . . . . Its failure to [amend before July 1] do so reveals a lack of diligence that is incompatible with a finding of good cause.").

Defendants took the position at the hearing and in their proposed counterclaims that they failed to bring the claims earlier because it "appeared that the conduct was isolated and damages were less quantifiable." (Dkt. 148-1 ¶ 60.) This does not appear to be a statement that Defendants did not believe they had a Rule 11 basis for the proposed

counterclaim when they filed their answer, but instead more of a statement that they did not think it was worth it to bring a counterclaim. If it is the first, this rings hollow since Defendants were willing, for the purposes of Rule 11, to at least assert an after-acquired affirmative defense as part of their Answer based on the information they did possess. (Dkt. 41 at 30.) Moreover, Defendants cannot rely on the requirements of Rule 8, Rule 11, or Rule 12 to manufacture good cause under Rule 16 to allow them to add the claim now. "If that was the case, then everyone would wait to bring the majority of their claims after discovery." *Jamie C. Andrews, v. Fairview Health Servs.*, No. 21-cv-1449 (ECT/ECW), 2022 WL 542427, at *8 (D. Minn. Feb. 23, 2022) ("While the Court appreciates Plaintiff's desire to have strong evidence in her possession before bringing a cause of action, that is not what Rule 8, Rule 11, or Rule 12 requires, nor does that desire equate to good cause under Rule 16 to allow her to add the claim now.") (citations omitted); *see also Schmidt Printing, Inc. v. Pitney Bowes, Inc.*, No. 10-1038 (JNE/TNL), 2011 WL 13262110, at *6 (D. Minn. Aug. 29, 2011) ("In support of its motion, Schmidt Printing contends that it did not move earlier because of the requirements of Fed. R. Civ. P. 9(b) and 11. This argument is unpersuasive because the obligations under Fed. R. Civ. P. 9(b) and 11 do not operate independently of Fed. R. Civ. P. 16. Rules 9(b), 11, and 16 present hurdles for all parties. Thus, the burdens of Fed. R. Civ. P. 9(b) and 11 do not create "good cause" under Fed. R. Civ. P. 16."). Further, Defendants could have sought an extension of the deadline to amend the pleadings in March 2023 based on the information they did have as of November 2022. They did not.

If it is the second—that Defendants did not think it was worth it in March 2023 to bring a counterclaim for breach of the Agreement—the Court finds that Defendants' tactical decision to wait (and not seek an extension of the deadline to amend the pleadings) does not constitute good cause to amend the scheduling order to permit Defendants to add the counterclaims at this time. The Motion to Amend is denied as to the proposed breach of contract counterclaims involving Plaintiff's alleged conduct while employed at Apex. *See Morrison Enter., LLC v. Dravo Corp.*, 638 F.3d 594, 610-11 (8th Cir. 2011) (affirming district court's denial of motion for leave to amend on ground that a tactical choice not to pursue a claim earlier did not show diligence); *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-cv-1091 (JNE/JSM), 2010 WL 4193076, at *7 (D. Minn. Oct. 7, 2010) ("A strategic decision at the beginning of the case to not allege a MUTPA claim, because Aviva did not believe it had a basis for punitive damages at that time, does not constitute good cause for seeking the amendment now.").

**B.    Rule 16 Analysis - Proposed Breach of Contract Counterclaims Involving Information Defendants Say They Learned from the Salesforce Subpoenas**

The Court turns to the proposed counterclaims to the extent they are based on allegations that Plaintiff shared competitive and confidential information to Salesforce and customers about Apex in an attempt to cause Apex to lose business opportunities, which includes the proposed counterclaims for breach of contract, tortious interference with prospective business relations, and defamation. (*See* Dkt. 148-2, proposed counterclaims ¶¶ 66-85.) The gravamen of Defendants' good cause for amending the scheduling order to allow them to amend their Answer to add such claims is that

Defendants only learned of the information supporting these claims through the 81 pages of documents produced by Salesforce on July 11, 2024.  However, this argument requires the Court to ignore that Defendants served the subpoena that led to the documents at issue on Salesforce close to two years after discovery began, and on the eve of dispositive motion practice.

> As set forth above, the June 27, 2024 subpoena to Salesforce sought the following:

> Custodians: Employees Allison Kutz & Margaret (Maggie) Kutz Search Parameters: All emails or messages sent/received on any platform (Teams, Slack, Skype, Google Chat, etc) containing "Apex" or "Rapp" from 9/1/21 to present. Produce the full conversation for each search hit.

(Dkt. 154-2 at 2.)

By way of comparison, Defendants' October 14, 2022 RFP Set I to Plaintiff also sought the following in Request No. 18: "Your communications regarding or referring to Apex or Rapp following your separation of employment, including with any Apex business partner such as Oracle or Salesforce."  (Dkt. 154 ¶ 18.)  At least as to Plaintiff, the documents sought from her directly in 2022 are the essentially the same as sought directly from Salesforce in 2024.[6]  Defendants also knew as of January 2023, that Plaintiff would only produce responsive documents "in her possession and/or control." (*Id.*)  Plaintiff's counsel also represented that she objected to the production of Salesforce

---

[6]     The Court also notes that Defendants subpoenaed documents from Maggie on October 18, 2022.  (Dkt. 154 ¶ 7.)  On January 6, 2023, counsel engaged in a meet and confer regarding Maggie's responses, part of which included disputes regarding the request for all "correspondence with anyone regarding or referring to Allison Kutz," which Maggie objected to as being not discoverable as involving her work communications, and only asserting that she was producing discovery in her custody and control.  (Dkt. 51-3 at 6-7.)  Defendants never moved to compel as to Maggie.

documents.  Defendants' March 2023 Motion to Compel did not seek an order requiring Plaintiff to produce her Salesforce documents on the grounds that Plaintiff said she did have possession or control of those emails.  (Dkt. 43.)  Defendants also did not issue a subpoena to Salesforce at that time.  Instead, as Defendants' counsel conceded at the hearing on the instant Motion, the March 2023 Motion to Compel only sought Plaintiff's Salesforce personnel record that was responsive to Request No. 26.  (*See* Dkt. 43, Dkt. 51-4; Dkt. 154 ¶¶ 16-19.)  Given that Defendants now argue that there is authority in this District that an employee does have authority over their communications at their employer (Dkt. 194 at 3 n.1), Defendants' failure to seek production of the Salesforce emails in March 2023 does not comport with diligence.  *See Adams v. Citimortgage, Inc.*, No. 12-cv-11 (SRN/JSM), 2013 WL 12145855, at *2 (D. Minn. Dec. 9, 2013) (citation omitted) ("Once defendant received no response to its discovery, it was incumbent upon it to take appropriate steps to protect its interests and bring a motion to compel when responses were not forthcoming."); *Fair Isaac Corp. v. Experian Info. Sols, Inc.* No. 06-cv-4112 (ADM/JSM), 2009 WL 10677528, at *14 (D. Minn. July 10, 2009) ("[W]hile it is true that Experian had represented on November 18, 2008 that it would start producing Customer Care emails pursuant to the sampling protocol on December 1 and finish the production by December 15, 2008, Fair Isaac never responded to this proposed schedule or addressed the fact that no emails were produced by December 15, until more than a month later, and once more, after the deadline for this Court to hear non-dispositive motions had expired.  In short, Experian clearly had broken its end of the bargain when it failed [to] produce any Customer Care emails by December 1, 2008; yet Fair Isaac failed

to do anything about it until two weeks after the non-dispositive motion deadline. This lack of action by Fair Isaac may be careless, inadvertent or due to other pressing matters, but it does not amount to the diligence required to establish good cause.") (string citation omitted).

Further, Defendants could have subpoenaed Salesforce for the emails almost a year before they did. Defendants take the position that they only learned about the possibility of relevant Salesforce communications due to Maggie's deposition in December 2023, leading to the January 2024 and June 2024 subpoenas to Salesforce and the documents that they now claim give rise to their proposed counterclaims. (Dkt. 147 at 4-5.) The assertion that Defendants only learned about the possibility of the relevancy of Salesforce communications involving Maggie and Plaintiff in December 2023 is contradicted by Defendants' Request No. 18, served on October 14, 2022, seeking communications regarding or referring to Apex or Rapp, including with any Apex business partner such as Salesforce. (Dkt. 154 ¶ 18.) It is further contradicted by Defendants' October 18, 2022 subpoena to Maggie seeking "correspondence with anyone regarding or referring to Allison Kutz." (Dkt. 51-3 at 6-7; Dkt. 154 ¶ 7.) The Court is not persuaded that Defendants did not know until Maggie's depositions that Maggie's and Plaintiff's communications, including with each other and including those sent using their Salesforce email accounts, could contain relevant information. The Court cannot find that Defendants' failure to pursue information they originally sought in October 2022 amounts to diligence.

Moreover, the Defendants admitted at the hearing on the instant Motion that they chose a more narrowly tailored subpoena in January 2024 (instead of the broader language of information sought in the June 2024 subpoena to Salesforce) to avoid a possible challenge from Salesforce.  Again, this tactical decision it not consistent with diligence given the procedural posture of the case as of January 2024—especially where the Court had not authorized new document discovery at that time outside of a few exceptions.

In sum, the failure to take timely action overall in terms of obtaining documents and information sought as early as October 2022, and the delay in bringing any motion to amend the counterclaims—indeed, waiting until the eve of dispositive motion practice—amounts to a tactical decision that turned out poorly or carelessness or inadvertence at best.  "It hardly bears mentioning . . . that carelessness is not compatible with a finding of diligence and offers no reason for a grant for relief."  *E.E.O.C. v. Hibbing Taconite Co.*, 266 F.R.D. 260, 265 (D. Minn. 2009) (quotation marks and citation omitted); *see also C.H. Robinson Co. v. Zurich Am. Ins. Co.*, No. 02-cv-4794 (PAM/RLE), 2004 WL 1765320 at *1 (D. Minn. Aug. 05, 2004) ("Carelessness does not excuse dilatoriness and 'offers no reason for a grant of relief.'") (quoting *N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1144 (D. Minn. 2003)); *Rosati v. Cleveland-Cliffs, Inc.*, 259 F. Supp. 2d 861, 875 (D. Minn. 2003) ("Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.") (cleaned up).  The Court denies the Motion because Defendants have not shown the good cause required to amend the scheduling order to permit the addition of counterclaims based on allegations that

29

Plaintiff shared competitive and confidential information to Salesforce and customers about Apex in an attempt to cause Apex to lose business opportunities, including the proposed counterclaims for breach of contract, tortious interference with prospective business relations, and defamation.

For all of these reasons, the Court denies the Motion because Defendants have not shown the good cause required under Rule 16 to amend the scheduling order to permit their proposed late addition of counterclaims to their Answer.  The Court therefore does not reach whether amendment should be permitted under Rule 15.

## C.    Extension of Discovery Deadlines

Because Defendants have not met their burden to show good cause to amend the scheduling order to permit their proposed amendment of the Answer to add counterclaims, the request for the additional time for discovery based on the proposed new claims is also denied.

## IV.    ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT**: Defendants' Motion to Amend Answer to Plead Counterclaims and Extend the Discovery Deadline (Dkt. 145) is **DENIED**.

Date: December 6, 2024                    s/ *Elizabeth Cowan Wright*
                                          ELIZABETH COWAN WRIGHT
                                          United States Magistrate Judge